312

Chicago Title & Trust Company, Appellee, v. Walter
B. Prendergast, Appellant.

Gen. No. 32,845.

Opinion filed November 7, 1928. Rehearing denied November 23, 1928.

CHARLES P. R. MACAULAY, for appellant.

SHERMAN C. SPITZER, NORBERT B. TYRRELL and CASSIUS A. SCRANTON, for appellee.

MR. JUSTICE WILSON delivered the opinion of the court.

The bill of complaint in the circuit court charges that the Chicago Title and Trust Company is the owner of a principal note designated as Note C and interest notes designated as C9 and C10, the last two being for interest due on the principal Note C; charges that the notes were made by one Metzen and his wife and are overdue and unpaid and are secured by a certain trust deed to complainant as trustee; charges that the trust deed in question was foreclosed in the supe-

rior court of Cook county by one Russell who was the owner of two principal notes known as A and B and which were secured by the same trust deed as that involved in this litigation; charges that the complainant appeared in the superior court and set up the fact of its ownership of Note C and that the cause was referred to a master in chancery and that, thereupon, the superior court entered a decree by which $1,796.03 was found due to Russell and $162.30 was found due to the complainant here, Chicago Title and Trust Company; charges that by virtue of said decree the property was ordered sold and that at the sale the defendant and all persons claiming through them be barred from all equity of redemption or claim to the premises; charges that prior to the filing of the bill in the superior court by the said Russell, the parties among themselves agreed that the lien of Note C should be superior to the other notes secured by the trust deed; charges further that before the master it was stipulated and found that the Chicago Title and Trust Company had expended the sum of $162.30 for solicitors' and stenographers' fees by reason of being made a party to said proceeding; charges that Note C was not being foreclosed under said proceeding and that the master's report so found and was approved by the chancellor in the superior court; charges. that the property was sold under the decree but that the purchaser Prendergast learned from an examination of the master's report in the circuit court that it was not the intention of the parties to foreclose the trust deed Note C; charges that at the sale the master announced to the bidders that the premises were being sold subject to the lien of the complainants by reason of their being the owners of Note C and the interest coupons hereinbefore referred to; charges that the sale was reported back to the court and that there it was insisted that the sale should be confirmed because of the

fact that Note C was due and in default and that Prendergast should receive his deed so that he might pay off that indebtedness; charges that Prendergast acknowledged complainant's lien; that the sale was confirmed and a deed issued to Prendergast but that said deed omitted to recite therein that the premises were sold subject to the lien of Note C; that Prendergast, by his conduct, caused the court to believe that he did not intend to take the property free from the lien of the note in question; that he is therefore estopped to deny that the property purchased by him is subject to the lien of Note C. The bill asks foreclosure of the trust deed by virtue of the default of the payment of Note C and the interest coupons thereon in order to satisfy said note and interest due.

Defendant filed his certain plea in said cause, alleging that the superior court in its decree found the equities with Russell and that the premises were sold pursuant to said decree and that the Chicago Title and Trust Company, complainant, after the approval of the sale by the superior court, took its share of the proceeds of said sale, viz., the sum of $162.30, and that the report of sale contains nothing to the effect that the premises were sold subject to any lien, but, on the contrary, declares that the property was sold according to the terms of the decree.

The defendant filed his answer in support of said plea, alleging that, from an examination of the records in the cause pending in the superior court, it appeared to him, the defendant, that the foreclosure was for the entire indebtedness secured by the trust deed and that it should be sold free and clear of all claims and that he was not influenced in purchasing the property by anything stated by the master, but solely by consideration of the fact that the decree stated that it was a foreclosure sale without reservations.

From the facts it appears that the property was approximately of the value of $8,000, and that the amount found due by the decree was $3,120.97, plus cost of the proceedings, which amounted to $373.37. The property was bid in by the defendant Prendergast for the sum of $3,100 and the master recommended that the sale be approved, and, in the order approving the sale in the superior court, it was found that the sale was conducted according to law and in accordance with the terms of said decree and was fairly made and the master was directed to deliver a deed to the premises to said Prendergast and to distribute the proceeds of the sale in accordance with the terms of the decree. The master's deed, dated January 15, 1926, recites that the premises were sold by him pursuant to the decree of the superior court to Walter B. Prendergast and the master conveyed said premises to said Prendergast in accordance with the decree.

There is evidence in the record to the effect that the defendant, or his counsel on his behalf, examined the proceedings in the superior court before bidding for the property and also made an actual examination of the premises and that, at the sale, defendant and his counsel discussed with the attorney for the complainant, Chicago Title and Trust Company, the lien claimed by complainant and that the master announced that he was selling the property subject to the complainant's prior lien.

After the sale had been made by the master to the defendant, there is testimony to the effect that complainant's solicitor talked with defendant's solicitor and was told that the defendant would make some arrangement for it, evidently meaning the lien of Note C, and would take a week or so to examine into it. Counsel for the complainant in the case in the superior court testified that at the hearing on the motion to confirm the sale, he told the attorney for the defendant

Prendergast that the attorney for the Chicago Title and Trust Company had been pressing him since April, when the mortgage matured, and that he had been "stalling" along in order to see what might be done and that Macaulay had said to him, "You can urge that to the court for one of the grounds for having the sale confirmed." He testified further that he could not be sure whether Macaulay advised him that he intended to pay this Note C, but that Macaulay had made no objection to paying it. Macaulay testified that he only told complainant's solicitor that he would examine the record.

The theory of complainant's bill appears to be based upon the proposition that the defendant, by certain equitable principles, is estopped to deny the lien of Note C against said property and that complainant is entitled to foreclose in this proceeding in the circuit court as if Note C had been specifically designated as a lien upon the property and the premises subject thereto.

Counsel for the defendant insist that the decree of the superior court is final and should be given every full intendment as to the matters therein contained and that it directly decrees that the property shall be sold free and clear of any liens and that the master's deed so conveyed it and that there was nothing in his conduct which would create an estoppel; that he had a right to rely upon the decree and purchase the property in conformity therewith and not in accordance with any statement made at the sale by the master.

From the record in the cause it appears that Prendergast was in no way concerned nor interested in the foreclosure suit in the circuit court and did not appear until he appeared as a purchaser at the sale. On the other hand, the Chicago Title and Trust Company, complainant herein, was a party defendant in the foreclosure suit in the circuit court, and, as such, fully

advised as to all the proceedings that took place in said cause. Representing, as it did, the interest involved in the ownership of Note C, it was incumbent upon it to see that its rights were protected and an examination of the final decree in said cause would have disclosed the fact that, by said decree, any rights it had by reason of the ownership of Note C were forfeited and disposed of. The decree provided that upon the sale the defendant and all persons claiming under it shall be forever barred and foreclosed from any and all equity of redemption and claim in and to said premises and every part thereof. It is unquestioned that if the purchase had been made at the sale by an innocent purchaser and no mention made by the master, as claimed, that it was being sold subject to Note C, that any rights of the complainant herein would have been finally disposed of by the decree and sale. It is insisted, however, that the purchaser, Prendergast, knew of the fact that it had been stipulated before the master that Note C was not to be included in the foreclosure proceeding and that, therefore, he was estopped, by reason of that fact and subsequent statements, from bidding in the property without also assuming the obligation of subjecting the property, under his purchase, to the lien of Note C. This placed upon the purchaser a greater obligation than it did upon the holder of Note C. Complainant had an opportunity to correct the decree in order to protect its rights and also had full opportunity after the sale to have had the master's report on sale conform to the facts as claimed.

The rule is, the order of confirmation is conclusive as to all matters upon which the court might have been called to pass had the parties chosen to have them brought forward as objections to the confirmation. A judicial sale is dependent upon the decree under which the sale is made and full faith and credit must be given

to said decree and to the deed issued pursuant thereto. Every presumption must be indulged in for the purpose of maintaining the integrity of the decree and sale, otherwise, judicial sales would be subject to attack in any collateral proceeding. The Supreme Court of this State in the case of *Speck v. Pullman Palace Car Co.,* 121 Ill. 33, in its opinion says:

"(Freeman on Co-tenancy and Partition, sec. 548.) And the rule is, that the order of confirmation is conclusive as to all matters upon which the court might have been called upon to pass, had the parties chosen to have brought them forward as objections to the confirmation. Freeman on Void Judicial Sales, sec. 44. See, also, authorities cited in note three."

Upon foreclosure of a trust deed in the nature of a mortgage, the cause of action is merged in the foreclosure and sale and all rights and liabilities growing out of the trust deed are merged in the decree and enforced according to its provisions. *Lightcap v. Bradley,* 186 Ill. 510.

In the case at bar, Note C was part of the trust deed being foreclosed and, by the decree, the rights and liabilities arising thereunder were merged in the decree.

It is a well-settled principle of law that one court of equity has no authority to exercise a revisory jurisdiction over the decrees of another court of equity by correcting error or setting aside or reversing a decree. *Simmons v. Hefter,* 308 Ill. 292.

It is insisted on behalf of complainant that this proceeding is not for the purpose of setting aside or revising the decree of the superior court, and it contends that the decree is proper but, by the conduct of the defendant at the sale, the defendant is estopped to deny the validity of the lien of Note C and the foreclosure brought under this proceeding. By virtue of this position counsel cannot urge fraud on the part of the de-

fendant because, if there was fraud the relief would be a bill of review in the superior court to review the decree; consequently, the sole reliance of complainant is based upon the conduct of the defendant and not upon fraud in the procurement of the deed.

We are cited a number of cases to the effect that a purchaser of real estate who bargains therefor at a price fixed by deducting the amount of the apparent liens and incumbrances from the real value of the land is, thereafter, estopped to deny the validity of such liens and incumbrances. In support of said contention there is cited a number of instances of transfers between individuals. In most of these cases, it appears that the deed of conveyance contained a provision that the sale was subject to such a lien or incumbrance.

The case of *Gibson v. Lyon,* 115 U. S. 439, cited by counsel for the complainant as an illustration of estoppel arising under a judicial sale, was a case where the deed of conveyance contained a clause to the effect that the sale was subject to a mortgage.

The case of *Crooks v. Douglass,* 56 Pa. St. 51, was a sale under an execution.

We believe there is a clear line of distinction between the cases cited and the case at bar. In the pending action, the decree itself, while it announced that the master's report was approved, proceeded to declare the amount due under the foreclosure proceedings and to announce that a sale of the premises would be free and clear of any liens or incumbrances. The master's report of sale contained nothing to the effect that the purchaser was bidding subject to a liability under Note C. The master's deed, executed in conformity to an order of the superior court, was a conveyance of all right and title in and to the premises without any reservation as to the Note C involved in this action. If the superior court spoke the truth by its decree and its approval of the master's report of

sale and its order that the premises be sold in conformity with the decree, then every presumption should be indulged in to the effect that the court had so spoken the truth and intended to do exactly what the decree provided should be done. The master has no power to sell other than in the manner provided for in the decree and a purchaser has no obligation other than to examine the decree. He has a right to rely upon it as the basis of his purchase. The action of the owners of Note C, in permitting the decree to be entered without protest and the property to be sold in conformity with that decree, would be sufficient to preclude them in our opinion from later questioning the sale or attempting to claim an estoppel by reason of the action of the defendant in purchasing the same under the circumstances in this case. The purchaser had a right to rely upon the decree and was not bound by the statement of the master, if any, during the course of the sale. It may be true that the actions of the purchaser in this regard may have been of such a character as not to meet with the approval of a court of equity, but, as it is not charged or claimed that he was guilty of fraud, this court is of the opinion that it is not sufficient conduct upon which it can or should overthrow the decree of the superior court after indulging every intendment in favor of the fact that the chancellor of the superior court was fully consonant of the action which it took in entering the decree of sale.

For the reasons stated in this opinion the decree of the trial court is reversed and the cause remanded with directions to dismiss the bill for want of equity.

*Reversed and remanded with directions.*

HOLDOM, P. J., and RYNER, J., concur.