## GIBSON v. LYON & Others.

IN ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE EASTERN DISTRICT OF PENNSYLVANIA.

Argued March 13, 16, 1885.—Resubmitted October 22, 1885.—Decided November 23, 1885.

The assignee of a mortgage in Pennsylvania obtained judgment of foreclosure against the mortgagor, and, by injunction, issued in a proceeding in equity, at the suit of the assignee of the equity of redemption, was restrained from sale under the judgment. It was ordered in this suit in equity that the injunction stand until the holder of the mortgage transfer the bond and mortgage, and assign the mortgage suit, on receiving full payment of debt, interest, and costs. Subsequently the injunction was dissolved and the mortgagee was authorized to proceed upon the mortgage unless the defendant in the foreclosure suit should pay the same before a day named in the order, which time was extended by a subsequent order to another day named. No payment or tender of payment was made by any one until after the expiration of the last-named day. *Held,* That after the last-named day the mortgagee was not bound to transfer the debt and suit, but could proceed at law on the mortgage and judgment.

A single verdict and judgment in ejectment in Pennsylvania, not being conclusive under the laws of that State, is not conclusive in the courts of the

United States, although entitled to peculiar respect, when the questions decided arise upon the local law of the State.

The sanction of the court to a conveyance under proceedings and judgment for foreclosure of a mortgage in the Orphans' Court of Philadelphia, being a judicial act, such a deed describing the estate as conveyed subject to an outstanding mortgage, estops the grantee from denying the validity of the mortgage.

If a mortgage in Pennsylvania covers two or more tracts of land, and a sheriff under judgment for foreclosure, and execution, sells one tract for more than enough to pay the mortgage debt, and then proceeds to sell the other tracts, and all the sales are duly completed, and the deeds to the purchasers duly executed and delivered, without objection on the part of the owners, it is too late to object to the regularity of the proceedings.

In Pennsylvania the fact that a judgment for foreclosure of a mortgage was erroneous, and could have been reversed upon a writ of error, does not invalidate a sheriff's sale, made under the judgment, while the same stands in full force and unreversed.

This was an action of ejectment to recover possession of certain real estate in Philadelphia, brought by the plaintiff in error, a citizen of New Jersey, against the defendants in error, citizens of Pennsylvania, in which there was judgment for the defendants below, which was brought here for review by this writ of error.

The cause was submitted to the court, on the trial below, a jury being waived in writing, where judgment was rendered upon the following findings of fact:

1. In 1861 George W. Roberts was seized of the premises in dispute, situate at the southeast corner of Broad and Oxford Streets, containing in front on Broad Street forty-eight feet, and extending in depth on Oxford Street one hundred and forty-three feet. On April 13, 1861, the said George W. Roberts mortgaged the same to the Reliance Insurance Company, of Philadelphia, to secure the sum of $5000.

2. In 1862 George W. Roberts died, and on the 17th of December, 1863, his heirs presented a petition to the Orphans' Court of Philadelphia County for leave to sell the above premises under the act of April 18, 1853, clear and discharged of all liens in the hands of the purchaser. On January 13, 1864, the said premises were sold to John Rice for the sum of $10,500, which sale was, on January 15, 1864, approved and

confirmed by the Orphans' Court aforesaid, and security approved and entered in the sum of $21,000. The conveyance to the said John Rice was made January 30, 1864, in consideration of the sum of $5500, "and under and subject to the payment of the mortgage debt or sum of $5000, with interest, made and executed by the said George W. Roberts to the Reliance Mutual Insurance Company, of Philadelphia, dated April 13, 1861, and recorded in mortgage-book A. C. H., No. 9, page 71, &c." This provision is made in the *habendum* of the deed, but not in the premises. On the fifth day of February, A.D. 1864, this conveyance was duly acknowledged before the Orphans' Court aforesaid.

3. On February 11, 1865, John Rice and wife conveyed the said premises to Sarah A. Jermon, in consideration of $8000, "under and subject to the payment of the said mortgage of $5000," held by the Reliance Insurance Company.

4. On June 5, 1867, the said mortgage of $5000 was duly assigned by the Reliance Insurance Company aforesaid to the defendants, who subsequently foreclosed the same by proceedings in the Supreme Court of Pennsylvania to July Term, 1867, No. 154. The action was brought against George W. Roberts, and judgment was duly obtained upon two returns of "*nihil*," but after judgment, both the said Sarah A. Jermon and J. Wagner Jermon appeared and made several applications to open the judgment, which were refused.

5. On February 17, 1868, J. Wagner Jermon and Sarah Ann, his wife, filed a bill in equity in the Supreme Court for the Eastern District of Pennsylvania, to January Term, 1868, No. 60, averring that the defendants were creditors of J. Wagner Jermon, and were proceeding upon the mortgage for the purpose of realizing their claims against J. Wagner Jermon, and also averring that Sarah A. Jermon had caused a tender to be made of principal, interest, costs, &c., to the defendants, and requested them to execute an assignment of the mortgage prepared and presented to them, which they refused.

Whereupon a decree was entered "that an injunction be granted as prayed for to restrain the sheriff's sale of the property mentioned and referred to in the bill, and that the said

injunction do stand until the defendants, Lyon and Taylor, do execute an assignment of the bond and mortgage referred to in the bill, and a transfer of the suit brought upon the said mortgage, upon receiving payment of the debt and interest secured thereby, together with all costs, upon the execution of which assignment and transfer the said injunction shall be dissolved, &c.," which said decree was affirmed by the Supreme Court, February 23, 1869, and a *procedendo* awarded.

On April 3, 1869, the Supreme Court aforesaid decreed that the injunction should be dissolved, and the defendants hereto should be at liberty to proceed upon their said mortgage, unless the said J. Wagner Jermon or Sarah A. Jermon should pay the same before the 20th of April, 1869. On April 20, 1869, the time was, upon the application of J. Wagner Jermon, extended to May 10, 1869. No payment or tender was made on or before May 10, 1869.

6. On September 18, 1869, a *levari facias* was issued in the action to foreclose the mortgage, wherein the premises were described as three properties, viz:

Lot No. 1. S. E. corner of Broad and Oxford streets, forty-eight feet on Broad street by one hundred and eleven feet on Oxford street.

Lot No. 2. South side Oxford street one hundred and eleven feet east of Broad street, sixteen by forty-eight feet.

Lot No. 3. South side Oxford street one hundred and twenty-seven feet east of Broad street, sixteen by forty-eight feet.

Lot numbered 1 was purchased by the defendants at the sheriff's sale, made October 4, 1869, for the sum of $10,000; and No. 2 was purchased at the same sale, by the defendants, for the sum of $2000. The sheriff's return to the writ of *levari facias* was, *inter alia*, " and it appearing that the plaintiffs in the writ are entitled to be paid the sum of $5748$\frac{47}{100}$, being the amount of principal and interest to day of sale of the mortgaged premises sued on this case, I have taken their receipt for the same, and balance of purchase money I have as within commanded."

On December 4, 1869, the sheriff's deed for the premises

Nos. 1 and 2 was duly acknowledged and delivered to the said defendants. No disposition was made of lot No. 3.

7. As to lot No. 3: By virtue of certain proceedings in the District Court of Philadelphia County, of December Term, 1866, No. 1421, the premises situate on the south side of Oxford street, one hundred and twenty-seven feet east of Broad street, sixteen feet by forty-eight feet, were exposed to sheriff's sale on January 3, 1870, upon a *venditioni exponas,* issued December 3, 1869, under a judgment obtained by W. A. Arnold against J. Wagner Jermon and Sarah A. Jermon, his wife. The first count of the narr. filed in this action was for materials furnished to the said premises at the request of said Sarah A. Jermon. The second count was for materials furnished at the request of J. Wagner Jermon and Sarah A. Jermon, and the judgment was confessed in open court. At the sale the premises were purchased by defendant, and on January 22, 1870, the sheriff's deed therefor was duly acknowledged and delivered to defendants.

8. That on the 3d July, A.D. 1872, an ejectment was brought in the Supreme Court of Pennsylvania, sitting at *nisi prius* to July Term, 1872, No. 130, by J. Wagner Jermon and Sarah A. Jermon against these defendants, wherein a verdict was rendered for these defendants, and on March 6, 1876, this was affirmed by the Supreme Court of Pennsylvania sitting in banc.

9. On March 7, 1876, Sarah A. Jermon, wife of J. Wagner Jermon, conveyed the premises in dispute to William L. Gibson, a citizen of the State of New Jersey, for the consideration of five hundred dollars. This conveyance purports to be made by Sarah A. Jermon alone. J. Wagner Jermon joined in the covenants, and both she and her husband signed and sealed the deed, and it was separately acknowledged.

*Mr. David C. Harrington* [*Mr. J. Carroll Brewster* and *Mr. George W. Biddle* were with him] for plaintiff in error, cited *Lyon's Appeal,* 61 Penn. St. 15; *Brewer* v. *Fleming,* 51 Penn. St. 102; *Gilbert* v. *Hoffman,* 2 Watts, 66; *Mevey's Appeal,* 4 Penn. St. 80; *Quinn's Appeal,* 86 Penn. St. 447;

*Menges* v. *Oyster*, 4 W. & S. 20; *Cadmus* v. *Jackson*, 52 Penn. St. 295, 303; *McLanahan* v. *McLanahan*, 1 Penn. 96; *Bowers* v. *Oyster*, 3 Penn. 239; *Mode's Appeal*, 6 W. & S. 280; *Kinley* v. *Hill*, 4 W. & S. 426; *Anderson* v. *Neff*, 11 S. & R. 208; *Maule* v. *Weaver*, 7 Penn. St. 329; *Shoenberger* v. *Hay*, 40 Penn. St. 132; *Samms* v. *Alexander*, 3 Yeates, 268; *Fetterman* v. *Murphy*, 4 Watts, 424; *Hoffman* v. *Shohecker*, 7 Watts, 86; *Caldwell* v. *Walters*, 18 Penn. St. 79; *Swayne* v. *Lyon*, 67 Penn. St. 436; *Parke* v. *Kleeber*, 37 Penn. St. 251; *Finley's Appeal*, 67 Penn. St. 453; *Keiper* v. *Helfricher*, 42 Penn. St. 325; *Steinman* v. *Ewing*, 43 Penn. St. 63; *Hecker* v. *Haak*, 88 Penn. St. 238; *Hugus* v. *Dithridge Glass Co.*, 96 Penn. St. 160; *Gilmore* v. *Rodgers*, 41 Penn. St. 120; *Dixey* v. *Laning*, 49 Penn. St. 143; *Leedom* v. *Lombeart*, 80 Penn. St. 381; *Lockhart* v. *John*, 7 Penn. St. 137; *West* v. *Cockran*, 104 Penn. St. 482; *Gardner* v. *Sisk*, 54 Penn. St. 506; *Simons* v. *Kern*, 92 Penn. St. 455; *Girard Life Ins. Co.* v. *Farmers' & Mechanics' Bank*, 59 Penn. St. 388; *Thompson* v. *Lorein*, 82 Penn. St. 432.

*Mr. William Henry Rawle* for defendants in error.

MR. JUSTICE MATTHEWS delivered the opinion of the court. After stating the facts in the language above reported, he continued:

Before proceeding to consider this case, as presented by the findings of fact, it is necessary to dispose of an assignment of error based on a ruling of the Circuit Court during the progress of the trial. It appears from a bill of exceptions that "the plaintiff offered to prove that a tender of the money, under decree of the Supreme Court of Pennsylvania, in suit No. 60, January term, 1868, was made about the end of May, 1869, by Charles H. Muirhead; that the assignment was returned from Lyon and Taylor executed in blank; that said C. H. Muirhead required that an assignment of said mortgage, with the blanks filled in, should be signed by said Lyon and Taylor; that A. V. Parsons, Esq., representing the parties, Lyon and Taylor, agreed to procure the assignment so com-

pleted, but that such an assignment was not made, and the parties, Lyon and Taylor, absolutely refused to make the assignment and receive the money. Counsel, on being asked, say that the money was ready, but was not actually shown Lyon and Taylor, or their attorney, and aver that an actual tender was not necessary under the refusal of Lyon and Taylor to take the money and make the assignment."

It will be observed that the tender referred to in this offer was not made by the party obliged to pay the debt or entitled to do so, for the purpose of removing the encumbrance of the mortgage upon the property, nor in payment of the mortgage debt, and in satisfaction of the mortgage and the judgment rendered thereon, but was an offer made by a stranger to pay the amount due on account thereof, accompanied with a demand to execute an assignment to a named third party of the debt and securities, compliance with which was a condition of the offer of payment. If accepted, the effect would have been to transfer the debt and mortgage and judgment rendered thereon to an assignee, and not to extinguish it. This the plaintiffs were under no legal obligation to do, neither by contract, nor by the terms of the decree referred to, inasmuch as the time within which such payment might be made for that purpose was limited by the decree to May 10, 1869. After that they were expressly left at liberty by the decree itself to proceed, at law, upon the mortgage and judgment previously rendered thereon.

This question being removed from the controversy, it is urged by counsel for defendants in error, that the judgment of the Supreme Court of Pennsylvania in the ejectment in favor of the defendants against the immediate grantors of the present plaintiff below, referred to in the eighth finding of fact, if not entitled to the force of an estoppel as *res judicata*, is at least an authoritative decision of the highest court of the State upon the law of the case, which, as it involves only questions of title to real estate within its territory dependent on its local jurisprudence, ought to furnish the obligatory rule of decision for the courts of the United States.

The former judgment in ejectment is not a bar to the present action, according to the law of Pennsylvania, where the subject

is regulated by statute. 1 Brightly's Purdon's Digest Laws of Pennsylvania, 535.

By the act of April 13, 1807, two successive verdicts and judgments in favor of the same party will defeat a third eject- ment; but where there is verdict against verdict, and judgment thereon, a verdict and judgment in a third ejectment is conclu- sive. *Britton* v. *Thornton*, 112 U. S. 526.

As a precedent, the decision of the Supreme Court of the State, though single, is entitled to peculiar respect, because all the questions decided arise upon the local law of the State; but it cannot have conclusive force in the courts of the United States, unless it has become a rule of property. *Burgess* v. *Seligman*, 107 U. S. 20; *Carroll County* v. *Smith*, 111 U. S. 556.

The plaintiff in error, being a citizen of New Jersey, had a constitutional right, by virtue of that fact, to invoke the juris- diction of the courts of the United States, and is entitled to their judgment upon his rights under the laws of Pennsylvania.

The title of the plaintiff is derived from Sarah A. Jermon. Her title was vested in her by the deed from Rice mentioned in the third finding of fact, and that of Rice was acquired by the conveyance described in the second finding, and the pro- ceedings in the Orphans' Court of Philadelphia from which it resulted. Each of these conveyances contains a recital that it is made under and subject to the payment of the mortgage under which the defendants claim.

It is contended, on behalf of the plaintiff in error, that he is not estopped by these recitals to deny the existence of the mortgage, and to assert that, in point of law, it was extin- guished by the sale ordered by the Orphans' Court, such sales being required by law to be clear and discharged of all liens in the hands of the purchaser, and that consequently he is at liberty to insist that the subsequent sale, made under the mort- gage as a subsisting and valid lien, was void.

It is true that the statute of Pennsylvania, by which the sale ordered by the Orphans' Court was authorized, act of April 18, 1853, 2 Brightly's Purdon's Digest of Pennsylvania Laws, 10th ed. 1242, Section 5, p. 1244, provides that "by every such

public sale the premises sold. shall be discharged from all liens;" and it is also true that the sale prayed for in this instance was of the premises, "clear and discharged of all liens in the hands of the purchaser," and that the sale to Rice, approved and confirmed by the court, was for the sum of $10,-500, the full price and consideration of the purchase; yet, it is equally true, as appears from the recitals in the deed to Rice, which was duly acknowledged before the Orphans' Court, that of the consideration, as finally agreed upon between the parties, there was actually paid in cash only $5500, the remainder being represented by the existing mortgage to the Reliance Mutual Insurance Company, under and subject to which the conveyance was made, approved, and accepted. The proceedings and judgment of the Orphans' Court must be taken as a whole, and to include the execution, acknowledgment, and delivery of the deed. The sanction of the court to the fact and form of the conveyance was a judicial act, necessary to perfect the proceeding, for, without the deed, the sale would not have been consummated, and no title would have been divested and passed. *Foster* v. *Gray,* 22 Penn. St. 9, 15; *Brown's Appeal,* 68 Penn. St. 53. If the whole proceeding be void, because the court confirmed a sale upon terms not authorized by law, the plaintiff below had no title on which to base a recovery, and the defendants below were mortagees in possession within the protection of the decision in *Brobst* v. *Brock,* 10 Wall. 519; if it be erroneous merely, and therefore only voidable, it is good and stands until reversed, and cannot be questioned collaterally. If it be contended that the sale is good, but had the necessary legal effect of discharging the pre-existing mortgage, it cannot be denied that the mortgage debt was unpaid, and the mortgage security continued, in the face of the recital in the conveyance, under which the plaintiff in error claims his title. If that recital does not create a personal liability for the payment of the debt, enforceable against the purchaser in an action of covenant, it is, nevertheless, a condition upon which his title vested and depends. He certainly cannot be permitted to claim both under and against the same deed; to insist upon its efficacy to confer a benefit and re-

pudiate a burden with which it has qualified it; to affirm a part and reject a part. The whole title of the plaintiff in error rests upon that conveyance, and the continued existence of the mortgage as an encumbrance forms part of it. The deed comes into the case as evidence on behalf of the plaintiff, as the necessary support of any title whatever, and when he proves it for that purpose, he proves the existing mortgage of the defendant by the same act. The defendant's title, in other words, is part of the plaintiff's title, and by the very document relied on to establish the latter, the former is shown to be its superior, for it declares the title of the plaintiff to be subject to that of the defendant. It is a plain case of an estoppel. This view is supported by the decisions of the Supreme Court of Pennsylvania, in which the objections to it, presented in argument here, have been fully met. *Stackpole* v. *Glassford*, 16 S. & R. 163; *Zeigler's Appeal*, 35 Penn. St. 173; *Crooks* v. *Douglass*, 56 Penn. St. 51; *Ashmead* v. *McCarthur*, 67 Penn. St. 326. In *Crooks* v. *Douglass, ubi supra*, it was said to be "just a case, when, if the price of the estate belonging to the mortgagee is still in the purchaser's hand, he is in equity estopped from denying that the sale was made subject to the mortgage:" and, "having bought the estate with the understanding that he bids so much less for it, and should hold that much in his hands to be applied to the excepted mortgage, it does not lie in *his* mouth, at least, to say he takes the land discharged of it, under the operation of the general rule, that a judicial sale discharges all encumbrances except those expressly saved by statute." In that case the circumstances of the sale rested in parol, proof being admitted of what took place, while here they constitute recitals in the very deed which furnishes to the plaintiff in error the foundation of his title.

It follows, therefore, that the defendant in error had a lawful right to proceed upon his mortgage; that the judgment thereon was valid, and that the execution sale in pursuance thereof, so far at least as lot No. 1 is concerned, was effectual, when confirmed and executed by the sheriff's deed, to pass the legal title, and to cut off and destroy that of the plaintiff in error.

But other objections are made to the validity of the proceedings under the execution, in reference to that part of the premises described as lot No. 2. The *levari facias* issued upon the judgment upon the mortgage, directed the sale of the mortgaged premises for the satisfaction of the debt, describing them as divided into three lots. Lot No. 1 was purchased by the defendants, the owners of the mortgage, and plaintiffs in the action, for the sum of $10,000, and lot 2, at the same sale, was also purchased by them for the sum of $2000. The sheriff's return showed that he. took from the purchasers their receipt as plaintiffs in the writ for the amount of the debt, and interest, and that he had the balance of the purchase money as commanded.

It is now contended, on behalf of the plaintiff in error, that the sale of lot No. 1, being for more than was due to the defendants herein on the mortgage debt, satisfied the judgment and exhausted the authority to proceed further under the writ, and that the sale of lot No. 2 to the plaintiffs in the execution was therefore void for want of power in the sheriff to make it.

Under the laws of Pennsylvania, the proceeding upon a mortgage was by *scire facias*, in which, judgment having been rendered for the amount of the debt, interest, and costs, the mortgaged premises are directed to be seized and sold on execution by a *levari facias* for the satisfaction thereof. 1 Brightly's Purdon's Digest, Laws of Pennsylvania, 483, § 122.

In case there shall be a surplus of the proceeds of the execution sales after satisfaction of the judgment, the sheriff is bound to pay the same to the debtor or defendant. Ib. 484, § 123. And in all cases, where there shall be disputes concerning the distribution of the money arising from sales on execution, the court from which the execution shall have issued is invested with power, upon notice to parties interested, to hear and determine the same according to law and equity. Ib. 656, § 107. The sheriff makes return of the sale, with the proceeds, to the court whence it issued, and gives to the purchaser a deed for the premises so sold, but not until it has been formally acknowledged in court, as required by law. Ib. 658, § 119. This acknowledgment is a public, judicial act, made in open court,

and only after notice to all parties in interest. Ib. 658, § 122.

To this proceeding the judgment debtor is a party, and at the hearing, may make any objection to the confirmation of the sale. The action of the court has all the effect of a judicial decree. *Foster* v. *Gray*, 22 Penn. St., above cited.

It was said in *Shields* v. *Miltenberger*, 14 Penn. St. 77, 78: "Most of them [the cases] recognize the deliberative and judicial character of an acknowledgment taken in open court, founded upon the conceded right of all parties having an interest in the question, to appear and dispute the propriety or regularity of the official sale; and all of them, from *Murphy* v. *Cleary*, 3 Yeates, 405, to *Dale* v. *Medcalf*, 9 Barr, 108, distinguish between those objections that touch the foundation of the proceeding, by impeaching the authority of the officer or establishing the existence of fraud, and those which simply suggest irregularities in the process or sale. The absence of authority, or the presence of fraud, utterly frustrates the operation of the sale as a means of transmission of title, and avoids it from the beginning. Either may, therefore, be insisted on, even after the formal acknowledgment of the conveyance; but mere irregularities, whether of omission or commission, which do not render the officer powerless, or taint the transaction with turpitude, may be cured by the tacit acquiescence of those who ought to speak in time."

The correctness of this rule, that the acknowledgment of the sheriff's deed in consummation and confirmation of the sale cures all defects, except want of power to sell in the officer, or fraud in making it, being conceded, it is still contended that, in the present case, the power of the sheriff to proceed with the sale of lot No. 2 ceased after he had made enough by the sale of lot No. 1 to pay the judgment debt, with interest and costs; and that consequently the sale of the latter was void for want of authority to sell.

But the sheriff acted strictly within the command of his writ. That was to seize and sell the mortgaged premises. If he proceeded to sell more than was sufficient to pay the debt, it was at most but a mere irregularity, even if it could be so con-

sidered. He had no judicial authority to determine questions that might arise upon the sale, or questions of distribution. The sale of lot No. 1 might, so far as he or any one could know, be set aside, and the proceeds of lot No. 2 might prove to be necessary to satisfy the execution. His duty was merely ministerial, and so long as he pursued only the literal precept of the writ, he cannot be said to have acted without authority, and be converted thereby into a wrongdoer. For aught that he might know, and for aught that we can tell from the present record, the whole proceeds of the sale of both lots may have been necessary to pay other liens upon the property, entitled to satisfaction on distribution. The presumption certainly is, in accordance with the maxim, *Omnia præsumuntur rite et solenniter esse acta,* that the surplus was either so applied, in which case, no more property was sold than was necessary; or, it was paid, as the law directs, to Mrs. Jermon, its owner, and in that event, she certainly is not in a situation to complain of the invalidity of a sale the fruits and proceeds of which she received, and has ever since continued to claim and hold as her property. She was a party to the proceeding, and had the opportunity then to present to the court the very objection now made to the validity of the sale, that more property had been sold than was in fact necessary to answer the exigency of the writ and satisfy the demands entitled to the proceeds. That was a question peculiarly for that court to determine, and that was the appropriate time for its determination. It was either then made or waived, and, in either view, the action and judgment of the court in directing the acknowledgment and delivery of the deed was conclusive. We conclude, therefore, that the objections to the title acquired by the sale of these two lots cannot be maintained.

A different question arises upon the title to lot No. 3. Although part of the mortgaged premises, it was not included in the sheriff's sale under the judgment and execution for the mortgage debt. It was sold in virtue of the judgment and proceedings described in the seventh finding of fact, being an action by one Arnold against Jermon and his wife to charge the wife's property. It is objected that this judgment, and

consequently all proceedings under it, including the sale on execution to the defendants, are void, because the declaration, one count of which was for materials furnished to the premises sold at the request of the wife, does not sufficiently allege a contract binding upon her as a married woman, and because the judgment was confessed, and not rendered upon a verdict or finding of the facts.

These questions, as to this very proceeding, were fully considered and, as we think, satisfactorily decided by the Supreme Court of Pennsylvania in the case of *Swayne* v. *Lyon*, 67 Penn. St. 436. That was an action by Lyon, the purchaser at this sale of the property in question, against the defendant, who had entered into a contract for its purchase, to compel a specific performance of that agreement. The defence which prevailed was that the title was not marketable. The court held that, although the title might be good, yet, if the purchaser would be exposed to litigation to support it, he ought not be compelled to take it. SHARSWOOD, J., delivering the opinion of the court, said: "Unless, then, in this case, Mrs. Jermon, or those claiming under her, would be absolutely concluded by the judgment under which the sheriff's sale took place, which constitutes the foundation of the vendor's title, from controverting her liability for the debt for which that judgment was confessed, in an action of ejectment to be hereafter brought for the property, the purchaser will be exposed to the annoyance and peril of such litigation," pp. 439–40. The first and second counts of the declaration, it is then stated, set out a contract by Mrs. Jermon, or by her husband at her instance and request, for materials furnished and work and labor done in and about the improvement, and for the benefit of her real estate; and as a married woman is liable on such a contract, it is further said, that it may logically follow that a judgment rendered against her for it, whether by default, confession or verdict, will have all the leading characteristics of a judgment against a person *sui juris*. The case, therefore, was made to turn upon the question whether Mrs. Jermon or those claiming under her, in an action of ejectment to be brought against the vendee, could be permitted to show that the debt for which

the judgment was confessed was not contracted by herself or her husband at her instance for the improvement of her separate estate. This question was answered in the affirmative, on the ground that evidence to that effect would not contradict the record. This was apparent, for the reason that the third count, which was the common count for goods sold and delivered on the joint promise of herself and husband, showed no good cause of action against her; and in a collateral proceeding, she would be at liberty to prove that the recovery was upon this count, and not upon the first .or second, which would be consistent with the record. It was accordingly held that this judgment might be avoided by Mrs. Jermon in a collateral proceeding, but only by proof that the actual recovery was upon a contract void as to her, that is, under the third count. In that event, it would not be supported by her confession, and on the other hand, it was not invalidated thereby, so far as it rested upon the counts which set forth a good cause of action against her. This judgment was followed by the decision of the same court, in the case of *Jermon* v. *Lyon*, 81 Penn. St. 107, where, speaking of the title to this lot, it said : ":As to the premises number three, it may be conceded that the judgment against Mrs. Jermon was erroneous and might have been reversed upon a writ of error, but this would not destroy the sheriff's sale made under the judgment while standing in full force and unreversed. This judgment was obtained by W. A. Arnold, with whom Lyon and Taylor had no connection." The opinion in *Swayne* v. *Lyon, ubi supra,* is cited with approval also in *Quinn's Appeal,* 86 Penn. St. 447, 453.

We have examined with care all the decisions of the Supreme Court of Pennsylvania cited by counsel for the plaintiff in error, and do not find any that are inconsistent with its judgments upon the title here in question, in *Swayne* v. *Lyon,* and *Jermon* v. *Lyon,* to which we have referred.

We find no error in the judgment of the Circuit Court, and it is accordingly　　　　　　　　　　　　　　　　*Affirmed.*