GROOMS *v.* BOARD OF DIRECTORS OF MIDDLEFORK AND SPRING CREEK DRAINAGE DIST. NO. 1 *et al.*

(*Jackson,* April Term, 1934.)

Opinion filed May 31, 1934.

590

Seldon L. Maiden, of Greenfield, for appellants.

R. E. Maiden, of Dresden, for Board of Directors.

King Webb, of Dresden, for Bondholders' Committee.

Mr. Chief Justice Green delivered the opinion of the Court.

This suit is brought by the administrator of a property owner to recover his ratable portion of an unexpended balance of funds in the hands of the above-styled drainage district; the fund having arisen from assessments levied on land within the district. Complainant's

intestate was an owner of land within said district and duly paid his assessments. Officers of the drainage district and the county officers were named as defendants, together with a committee representing the holders of bonds issued by the district. Interest and principal of the bonds were in default, and the bondholders were claiming the right to appropriate the money in the hands of the drainage district.

The case was tried upon a stipulation of facts, and the chancellor sustained the contention of the complainant in so far as complainant sought a recovery for himself. By an amendment to his bill, the complainant sought to have his bill sustained as one for the benefit of all owners of property within the district who had contributed to this unexpended balance. The chancellor declined to entertain the bill in this aspect.

Both the complainant and the bondholders' committee excepted to the chancellor's decree and both appealed to this court.

Middlefork, Spring Creek, and Levee district No. 1 was duly organized under chapter 185 of the Acts of 1909, by authority of the county court of Weakley county, in 1913. The district issued bonds in the sum of $140,000 under authority of, and in accordance with, the statute mentioned. Default has been made in the payment of assessments levied to meet these bonds, and proceedings have been taken by the bondholders, which it is not necessary to detail.

In September, 1917, an additional assessment was regularly levied upon the lands within this district for the extension of what is known as the Northfork levee.

This extension is said to have been a part of the improvement originally contemplated.

In August, 1919, a further and additional assessment was regularly levied upon the lands within this district to repair breaks occasioned by a flood.

Perhaps other objects were within the purview of these additional assessments, but neither of them were levied, as the proceedings indicate, with any purpose of devoting the funds so arising to the payment of the principal of the original issue of bonds or interest thereupon.

The additional assessments were authorized by section 11 of chapter 185 of the Acts of 1909, as follows:

"If the first assessment made by the court for the original cost of any improvement as provided in this Act is insufficient, the court may make an additional assessment in the same ratio as the first."

Under the general design of chapter 185 of the Acts of 1909, it was intended that an assessment should be made in the first instance sufficient to cover the cost of the work. Section 27 authorized the assessment to be spread over a period of years and the issuance of bonds to make funds for the work immediately available, the bonds to be paid out of the assessment.

Section 27 of the act also provides that, "should the cost of such work exceed the estimate, a new apportionment of the assessment may be made and levied and other bonds issued and sold in like manner, but in no case shall the bonds run longer than twenty years." Under the statute, therefore, one apportionment of an assessment may be made for one set of bonds and another apportionment of an assessment for another set of bonds.

So we think an assessment may be made for re-

pairs, and an assessment for extension work, and an assessment for maintenance. (See chapter 63, Acts of 1915.) The scheme of this legislation is that the proceeds of each assessment shall be devoted to the purpose for which it is levied.

In 1919, after the expenditure of a portion of the additional assessments levied in 1917 and 1919,.the board of directors of the drainage district passed a resolution reciting that, in view of conditions that had arisen, it would be a waste of funds to expend any more of the funds derived from these additional assessments for the purposes for which they were made. It seems that portion of the district upon which it was intended to expend the proceeds of these additional assessments was abandoned. The balance remaining from said assessments has since been held intact by the treasurer of the drainage district.

We think the chancellor properly decreed that complainant was entitled to his ratable portion of this fund. The fund was raised for a particular purpose, and, the purpose having failed, the drainage district held the fund as trustee for those contributing thereto.

The bonds of a drainage district are not like those of an ordinary corporation. The property within a drainage district is not directly pledged for the payment of such bonds. The bonds are secured by assessments which the law provides. If these assessments prove insufficient, if default is made in their payment, the statute provides the bondholders remedies. We find nothing in any of the statutes which would authorize the court to divert to the bondholders proceeds of assessments levied for other purposes.

Reference is made to the decision of this court in *Bondholders' Protective Association* v. *Northfork Drainage District et al.*, an unreported case from Dyer county. In that case there was an assessment for maintenance or administration purposes and for "casual default" on bonds. The court held the bondholders entitled to so much of this assessment as was not needed for purposes of maintenance.

Reference is also made to *Snowden* v. *Thompson,* 115 Ark., 587, 171 S. W., 919, in which the Supreme Court of Arkansas held that a balance of funds remaining from an assessment, after completion of the improvement, was available to bondholders. In that case, however, the court pointed out that the assessment from which this balance arose was levied to pay these particular bonds.

By chapter 685 of the Private Acts of 1931, the Legislature undertook to provide that the unexpended balance here in controversy should be refunded "to the present landowners within the boundaries" of this district. The chancellor properly ignored this act. The purpose for which these additional assessments were levied having failed, those persons, as heretofore seen, who had paid the assessment, were entitled to the unexpended balance of the same. The Legislature was without power to appropriate this fund to others. A sale of the lands of those contributing to this fund would not operate as an assignment of the claims of such persons to their shares in the fund.

We think the chancellor should have permitted the amendment by which the complainant sought to file the bill for himself and all other landowners who had contributed under the assessments involved to the unex-

pended balance here in controversy. It is well settled that a court of equity will entertain a bill by a *cestui que trust* for his own benefit, and for the benefit of others in like situation, seeking the administration of a trust fund, when the beneficiaries of the trust are numerous; that a *cestui que trust,* having filed a bill for his own benefit, may amend the bill to broaden its scope, as above indicated. *Watson* v. *National Life & Trust Co. et al.* (C. C. A.), 162 F., 7; *Larkin* v. *Wikoff,* 75 N. J. Eq., 462, 72 A., 98, 79 A., 365; *Milligan* v. *Mitchell,* 3 My. & Cr., 72, 40 Eng. Reprint, 852, and other cases collected under 65 C. J., 1034.

█ The point is made that the conclusion we reach will permit landowners to be reimbursed in part for the sums paid on the additional assessments when, at the same time, such landowners may be in default with respect to the original assessment. This objection, however, is not valid.

Section 24 of chapter 185 of the Acts of 1909, providing for the collection of delinquent assessments, concludes: "But such assessments may be collected by bill filed in Chancery, as hereinbelow provided, and no personal property of the owner of land so assessed shall be liable or distrained upon for such assessment, but the land so assessed only shall be liable for such assessment."

It was not the intention of the act of 1909 to make drainage assessments personal liabilities of a landowner. The proceedings outlined for the collection of such assessments are proceedings *in rem* directed only against the land assessed. The interest of a landowner in the unexpended balance of these additional assessments is his personal estate, and cannot be subjected, by distraint, off-

set, or otherwise to the payment of another assessment with respect to which he is delinquent.

The chancellor's decree will be modified as indicated, and the cause remanded for further proceedings. Costs so far accrued will be paid out of the fund in controversy, since it seems necessary that this suit should have been filed to secure the proper administration and distribution of this trust fund.