JOHNSON et ux. v. McKINNEY et al.—
222 S. W. (2d) 879.

Western Section.   October 22, 1948.

Petition for Certiorari denied by Supreme Court, March 11, 1949.

486

Galbraith & Galbraith, of Henderson, for appellants.

Ross & Ross, of Savannah, Willard N. Smith of Henderson, for appellees.

ANDERSON, P. J.   This bill was filed on April 29, 1946, by Carmon R. Johnson and his wife, Katherine Johnson, against G. E. McKinney and Virgil B. Holder. The object is to have removed as a cloud upon the complainants' title the sale of a tract of land of 29 acres owned by complainants as tenants by the entireties.   The sale was ordered in another proceeding in the chancery court of Chester County to enforce a lien for delinquent drainage assessments theretofore levied on said property

by the Jones Creek Drainage District No. 10. The defendant McKinney became the purchaser at the sale and later sold and conveyed the land to the defendant Holder. They filed a joint answer setting up a number of defenses presently to be noticed. By an amendment to the bill the drainage district was named as a party defendant. It filed no separate answer but contented itself with adopting the joint answer filed by its co-defendants. Upon the hearing the chancellor dismissed the bill and the complainants appealed.

The principal grounds of the attack on the sale are (1) that the complainants were not served with process in the proceeding instituted to enforce the lien of the assessment and were not otherwise given proper notice of the sale and; (2) that the land was not sold for cash as required by the applicable statutory provision, but that upon the contrary bonds of the drainage district were accepted in payment of the amount bid at the judicial sale.

The Jones Creek Drainage District No. 10 was organized in 1920. Assessments were made against the lands in the district for the payment of the cost of the improvements. The assessments were payable in annual installments. Bonds of the district were issued and sold, payable from the assessments. Among other tracts in the district was one designated "No. 11", assessed to the Charlie Stewart estate, containing 29 acres. This is the tract involved in the present case. The assessments against it were delinquent for the years 1929 to 1938 inclusive, amounting in the aggregate to $808.76, exclusive of interest, penalties and cost. On September 18, 1942, the Board of Directors of the drainage district caused a bill to be filed in the name of Chester County for the use of the drainage district, for the purpose of col-

lecting assessments against the land that were delinquent. There were included a number of tracts in addition to the 29-acre tract aforesaid.

The cause was heard at the March Term 1943, and a decree of sale entered, directing the Clerk & Master to advertise and sell a number of the tracts of land, including that here in question.

The sale was duly held and the defendant McKinney was the successful bidder on all of the tracts sold, including tract No. 11 owned by the complainants. The Clerk & Master reported accordingly, and his report being unexcepted to was confirmed at the September Term, 1943. Upon confirmation, the chancellor decreed that ''upon payment of the cost of the suit and all unpaid state and county taxes against said lands sold in the cause, all the right, title, claim and interest of· the respective parties to whom said lands were assessed for drainage taxes and the owners of the same, be divested out of them and each of them and vested in the purchaser, G. E. McKinney, his heirs and assigns forever, subject to the two years allowed by statute for redemption of the lands sold'', followed by a description of the respective tracts.

It was further ordered that upon the payment of the cost and state and county taxes and the expiration of the two years allowed for redemption, the Clerk & Master should make and acknowledge for registration and delivery to the said G. E. McKinney a deed conveying to him the said tracts.

These conditions having been complied with, the Clerk & Master executed and delivered a deed to McKinney who later sold the land to the defendant, Virgil P. Holder. The deed from McKinney to Holder contained the following:

"This being Tract No. 11 in the Jones Creek Drainage District assessed to Charlie Stewart Estate and later acquired by C. R. Johnson. G. E. McKinney acquired title in a decree of the chancery court of Chester County, Tennessee, in the cause of Chester County, Tennessee for the use of Jones Creek Drainage District No. 10, filed against Mrs. Robert Bell Short et al. to enforce a lien for drainage assessments. The redemption period being passed, G.E. McKinney acquired title in fee. There is also a deed from J. R. Galbraith to G. E. McKinney, in this cause of record in the Register's office of Chester County, Tennessee, in Book No. 42, page 564, and to which reference is here made."

■ Before reaching the challenge to the validity of the sale it is necessary to dispose of a contention made by the defendants which it is asserted is conclusive of the controversy apart from any other questions. It is insisted that because the complainants did not offer to reimburse the purchaser for the amount of his outlay he cannot maintain the bill. This contention is bottomed upon the maxim that, "He who seeks equity must do equity", but misconceives the practice in the enforcement of that maxim. Where it is applicable in a case of this kind, the making of an offer of reimbursement does not go to the right to maintain the bill, but may be decreed as a condition of granting the relief sought. Thus it is said that a court of equity "now does not wait for the complainant to offer to do equity, but acts upon the supposition that, knowing the requirement of the court, he is willing to do whatever equity towards the defendant the court may require of him". Gibson's Suits in Chancery, Section 39. "In general", says Mr. Gibson, "a complainant seeks to recover property from which the defendant has removed an incumbrance or to which the

defendant has added in good faith, relief will be granted the complainant only on condition that the defendant be reimbursed to the extent the complainant has been by him benefited". Ibid. In short, the condition imposed in a case of this kind is, as it were, the price of the decree which the court gives.

See also, Gaylor v. Miller, 166 Tenn. 45, 51, 59 S. W. (2d) 502; Kindell v. Titus, 56 Tenn. 727, 741; Strother v. Reilly, 105 Tenn. 48, 58 S. W. 332.

The case of Fowler v. Tankersley, Tenn. App., 222 S. W. (2d) 395, from the Equity docket of Obion County cited by the defendants, is not authority for a contrary view. That case is not in point on the facts. It went off on the ground of estoppel in pais.

It is thus necessary to dispose of the complainants' attack upon the validity of the decree confirming the sale of the land to enforce the lien of the assessments. At the time the bill was filed in the proceeding which resulted in the decree, there was of record in Chester County a deed showing that the tract in question was owned by the complainants as tenants by the entireties. However, the bill in that case described only one, C. R. Johnson, who is the same person as the complainant, Carmon R. Johnson, as being the owner, and he was named as defendant. His wife was not made a defendant.

Although he was named as a party defendant in that proceeding, the complainant, Carmon R. Johnson, contends that no process was ever served upon him. It appears that at the time that bill was filed, the complainants, though domiciled in Chester County, were actually living in the state of Mississippi, where the complainant, Carmon R. Johnson, was working. However, they frequently spent the weekends in Chester County at their home and the home of relatives. Carmon R. Johnson was

inducted into the United States Navy at Jackson, Mississippi, on the 1st day of May, 1943. He continued in the service until October 13, 1945, when he was honorably discharged.

■ The record in the other case disclosed that a subpoena to answer was issued on the 19th day of September, 1942, for the complainant, Carmon R. Johnson, and certain other defendants, and that it was returned executed on all of those named therein by G. L. Ball, a deputy sheriff. Pro confesso as to the defendants, including C. R. Johnson, was taken on March 23, 1943. The officer who served the process died before the present suit was tried. The complainant, Carmon R. Johnson, testified in this case that no process in the other proceeding was served upon him. The only corroboration of his testimony in this respect is purely negative in character. This, with Johnson's testimony, is insufficient to overcome the officer's return. Henry v. Wilson, 77 Tenn. 176; Posey v. Eaton, 77 Tenn. 500.

With respect to the rights of the complainant, Mrs Johnson, the case presents a different and more serious question. As already said, the fact that she was a tenant by the entireties of the tract appeared of record in Chester County at the time the bill to enforce the lien of the drainage assessments was filed. She was not named a defendant in that bill; she was never served with process; she did not enter an appearance in that case; nor was she ever notified actually or constructively that the land was to be sold. In fact, when the bill was filed and when the sale was ordered and had, she was actually living with her husband in the state of Mississippi..

The idea that by judicial fiat one can be deprived of his property without prior notice affording an opportunity to be heard is in conflict with the Anglo-Saxon

tradition, which is deeply rooted in this country. Generally, it is so contrary to our idea of fair play that when advanced, it immediately challenges the most serious attention. The great doctrine of notice is the cornerstone of our jurisprudence. Its fundamental nature has never been better described than by Chancellor Gibson in his classic work. Gibson's Suits in Chancery, Section 60. See also, Restatement of Law of Judgments, Sections 6, 32, 33, 34.

■ The general rule is that notice by service of process or in some other manner provided by law is essential to give the court jurisdiction of the parties; and judgment rendered without such jurisdiction is void and subject to attack from any angle. Thus it was held that a judgment founded on an original attachment, without service of process, publication or stay of proceedings is not erroneous but void, and though not appealed from was subject to collateral attack. Nashville & C. R. Co. v. Todd and Williams, 58 Tenn. 549; see also, Diehl v. Knight, 158 Tenn. 246, 248, 12 S. W. (2d) 717, and cases cited; 31 Am. Jur. 401, 402, 407, 408.

■ But the defendants contend that this rule has no application because a proceeding to enforce the lien of the drainage assessments is a proceeding in rem, and that therefore it was not necessary to make the owners of the land parties to the suit. It is insisted that in this respect the question is controlled by the cases dealing with the collection of delinquent state and county taxes.

A sufficient answer to this contention is that it ignores entirely the requirements of the Code provisions on the subject. While there is no personal liability on the part of the owner of the land for the payment of drainage assessments, in describing the procedure to be followed in the collection of such assessments, the Code specifically

provides that this shall be done by bills filed in the chancery court of the county in which the land lies and that they shall be in the name of the county for the use of the improvement district "and against the owners, if known, and if unknown, against them as such", and, moreover, that "such suits in chancery shall be proceeded with as other suits are in said court," with an exception not here material.

Code Sections 4355, 4356 and 4358.

It is true that the proceedings are in rem. Grooms v. Board of Directors, 167 Tenn. 589, 72 S. W. (2d) 772. But there hardly could be a clearer indication that the owners of the land if known should have notice of the suit and an opportunity to appear and defend it than that given by the statutory requirement above noted. Apart from this specific direction that the owners if known shall be named as defendants, the requirement that the suit shall be conducted as other suits in the chancery court clearly postulates that those in interest shall have an opportunity to be heard. In other words, to conduct the case without such an opportunity would not be to proceed with it in accordance with the practice of other suits in the chancery court.

We find no analogy in the cases dealing with the collection of delinquent state and county taxes which justifies the view that a chancery court is authorized to sell land to enforce the lien of delinquent drainage assessments without notice to the owner. Upon the contrary, we think those cases point to the opposite conclusion.

In State v. Collier, 160 Tenn. 403, 23 S. W. (2d) 897, 908, a suit to collect State, county and municipal taxes, the Court discusses at length the jurisdiction acquired by a seizure of the property in an action in rem. After pointing out that when such jurisdiction is so acquired,

all those having an interest in the property are deemed to have constructive notice of its seizure and are considered parties to the suit, the Court said: "Whether or not seizure of the property alone, without further notice, authorizes the court to proceed to judgment is a question upon which there is a conflict of authority. See cases collected in a note 50 L. R. A. 597." The Court then quotes with approval from the text of Freeman on Judgments (5th Ed.) Section 1530, as follows:

"A sentence rendered simply from the fact of seizure would not be a judicial determination of the question of forfeiture, but a mere arbitrary edict of the judicial officer. The seizure in a suit in rem only brings the property seized within the custody of the court, and informs the owner of that fact. The theory of the law is, that all property is in the possession of its owner, in person or by agent, and that its seizure will therefore operate to impart notice to him. Where notice is thus given, the owner has the right to appear and be heard respecting the charges for which the forfeiture is claimed. That right must be recognized and its exercise allowed before the court can proceed beyond the seizure to judgment. The jurisdiction acquired by the seizure is, not to pass upon the question of forfeiture absolutely, but to pass upon that question after opportunity has been afforded to its owner and parties interested to appear and be heard upon the charges. *To this end some notification of the proceedings, beyond that arising from the seizure, prescribing the time within which the appearance must be made, is essential.* Such notification is usually given by monition, public proclamation, or publication in some other form. The manner of the notification is immaterial, but the notification itself is indispensable." (Emphasis added.)

The foregoing principles were thus applied to the case in hand, and it was held that while Thomas B. Collier was not named as a defendant, the action being in rem he became a party by reason of the seizure of his land, but that as a general proposition he would have been entitled, by way of monition, to service of process before a decree against his land if he had not voluntarily made an appearance and participated generally in the defense of the case. Such appearance was held to be a waiver of process and of formal notice of the sale.

■ This case definitely establishes the proposition that although seizure of the property gives the court jurisdiction, the owner is entitled to some form of monition recognized by law before a valid sale can be made. This may be either by service of process or other notice which will afford the owner and the parties in interest an opportunity to put in an appearance and be heard, 48 Amer. Jur. 748, 752, Section 233, and 241.

The American Law Institute is in full accord with this view. Restatement of the Law of Judgments, Section 2 and Section 32, comment f.

But the defendants insist that the complainant, Mrs. Johnson knew the suit was pending, knew its purpose and took no steps to protect her rights and hence she "not only had constructive notice but actual notice as well."

It seems to be contended that in a case of this character, if the landowner merely learns from common report in the community that the suit is pending, no more notice is required. We do not think this is the law. Where the party is not made a defendant by service of process, the kind of notice required is clearly indicated by the quotation from Freeman on Judgments hereinbefore appearing, which was approved by the Supreme Court in State v. Collier. The pertinent language is as follows: "The

jurisdiction acquired by the seizure is, not to pass upon the question of forfeiture absolutely, but to pass upon that question after opportunity has been afforded to its owner and parties interested to appear and be heard upon the charges. To this end some notification of the proceedings, beyond that arising from the seizure, *prescribing the time within which the appearance must be made, is essential.''* Emphasis added.

In the Collier case supra, the Court held that the requirement in the Acts of 1921, Chapter 115, that ''said suit shall be conducted in accordance with the practice in Courts of Chancery in this State'', indicated the character of notification or monition required. ''That is'', said the Court, ''a summons shall issue as to those named as defendants or publication shall be made for them, as the circumstances indicate.'' The statute under consideration in the present case is even stronger. As above pointed out, it not only provides that the contemplated suits shall be proceeded with as other suits in chancery, but that the bills shall be filed against ''the owners, if known, and, if unknown, against them as such.''

The defendant relies upon some language of the Court in Esch v. Wilcox, 181 Tenn. 165, 178 S. W. (2d) 770, 771; another suit to collect delinquent state and county taxes. There, the complainant was actually served with process but insisted that her minor children as remaindermen were not made defendants and were not served with process. But it was admitted that the father and natural guardian of the children was served.

Of this situation, the court then said: ''We think that notice, whether it be formal, actual, or constructive, is sufficient so long as it is of such a character as to make the taxpayer aware of the proceedings and give him an

opportunity to pay the taxes and make his defenses." It is obvious that with reference to the kind of notice necessary to be given, there is nothing in conflict with what was held in that regard in the Collier case. Both express in somewhat different language that the notice must be of such character as to give the defendant the opportunity to make his defense. As pointed out by Mr. Freeman in the passage hereinabove quoted, to meet this requirement there must be some time prescribed in the notice within which the appearance must be made. Clearly this means notice from an authoritative source and not knowledge derived from common report. Cf. West v. Jackson, 28 Tenn. App. 102, 186 S. W. (2d) 915.

Collins et al. v. Oliver, 24 Tenn. App. 337, 144 S. W. (2d) 9, 11, also cited by the defendants, is not in point. The court there found that "the taxpayer was served with process, had constructive notice by publication, and had actual notice of the proceeding within time to have protected his rights."

The holding in the Collier case that a proper notice is a prerequisite to a valid sale is supported by the weight of authority. Thus, in 48 Am. Jur. 748, Section 233, it is said:

"Although a suit or proceeding to enforce a special or local assessment is essential in rem, it is ordinarily required that the owners of the property assessed be made parties to such proceedings, or at least that they be notified thereof. Otherwise, the judgment in such action or proceeding is void and the title of such owner is not divested."

See also Restatement of the Law of Judgments, Section 32, Comment f.

As already pointed out, the statutory provisions in this state specifically require that bills for the en-

forcement of the lien of drainage assessments shall be filed against the owners of the land if known, and if unknown, against them as such. Statutes providing for special assessments are in derogation of the common law and therefore to be strictly construed. No requirements of the statute can be disregarded. The prescribed procedure must be strictly pursued. 48 Am. Jur. 750, 751. This was not done with respect to the complainant, Mrs. Johnson, and therefore without regard to other questions, the attempted sale of her interest in the property was void. See 48 Am. Jur. 748, Section 233; and 752, Section 241; 31 Am. Jur. 401, 405, 407, 408; City of Laclede, to Use of Abell v. Libby, 221 Mo. App. 703, 285 S. W. 178.

Before leaving this phase of the case, it is well enough to note that although it is not cited, we have not been unaware of the ruling in Gaylor v. Miller, 166 Tenn. 45, 59 S. W. (2d) 502. The case is not in point. The distinction between it and the present case is that there the Court was dealing with a bill to convert a vendor's equity into a lien, whereas here the bill is not to establish a lien but to enforce one created by statute.

But there is another ground which we think determinative of this controversy in favor of both the complainants. This is that the property was not sold for cash as specifically required by the statute.

The defendant's response to this charge of the bill as set forth in their answer is brief. It is as follows: "Further answering paragraph VI, they say it is immaterial whether defendant G. E. McKinney paid for the land purchased by him with cash, or whether he paid for the same, as he had a right to do, in bonds or coupons. That is a matter, as defendants are advised, of which the complainants cannot complain." This succinctly gives

the defendant's contention about the question now under consideration. It cannot be sustained.

In his decree of sale the Chancellor specifically decreed that, "For the use and benefit of said district and for the payments of the outstanding and unpaid bonds issued by the said district with interest thereon, the complainant is entitled to a decree for the enforcement of the lien, etc." It was accordingly ordered that the Clerk & Master sell the land "at public outcry to the highest bidder, for cash". This decree was strictly in accordance with the applicable statutory provisions. The sale was regularly advertised and duly held. In addition to the tract here involved, the sale included five other tracts sold for the same purpose. As said, the defendant McKinney became the purchaser of all of them.

The aggregate amount of delinquent assessments, interest, penalties and attorneys fees on all six tracts was $6,438.69. The aggregate of McKinney's bids for the six tracts was $1,450.00.

With respect to the payment of the amount bid by McKinney on the several tracts, the master's report of sale is as follows:

"The undersigned further reports that the purchaser made no payment on his said bids, except to deliver to and deposit with the undersigned 22 coupons for $30.00 each, cut from the bonds owned by the purchaser, as follows, to wit: Five number 6; four numbered 7; three numbered 8; three numbered 9; two numbered 10; one numbered 11; one numbered 13; two numbered 14, and one numbered 15, leaving $750.00 of the bid made upon said lands, and the purchaser delivered to and left with the undersigned two of said bonds, the same having, as shown, a considerable amount of interest due thereon, and being bonds Nos. 4 and 7, for $500.00 each, and to be

credited on the amount bid for the purchase of said lands, which includes the advanced bids thereon, and the purchaser to pay the costs of the suit, and to pay all unpaid state and county taxes against said lands upon confirmation by the court of this report of sale.''

The report of sale was incorporated in the decree confirming it and divesting title to the tract in question out of complainants and vesting it in the defendant McKinney.

The record in the other proceeding discloses that on the tract here involved, McKinney first bid $400.00 and later for some unexplained reason, advanced his bid to $500.00, at which figure it was knocked off to him. The decree of sale discloses that the delinquent assessments against this particular tract, together with interest and penalty, amounted to $1,356.14.

McKinney's testimony indicates that he had purchased the bonds held by him, or at least some of them, at substantially less than par value, and that some of the bonds had been sold and bought at from 25c to 50c on the dollar.

The contention of the defendant is amplified in the brief as follows:

''The chancellor decreed that the land be sold for cash. The Clerk and Master advertised the sale as a cash sale. True it is, when the purchaser, who was the holder of all of the bonds of the district went to pay for the same, the Clerk and Master accepted as cash the bonds. There was no prejudice or injustice to the complainants in that. He reported his act to the court. The court approved it, confirmed the report, divested and vested title. All of that was before the complainants, when they filed their bill. They made no question upon that, but at last, what possible difference could it have made to the complain-

ants, whether the purchaser paid the cash, then immediately, as he had the right to do, present his bonds and receive the amount of cash back from the sale of the land. Merely the difference between tweedledee and tweedledum.''

While it is not necessarily determinative, the statement in the foregoing that McKinney, the purchaser, was the holder of all the bonds of the district, was no doubt an inadvertence. McKinney did not so testify. When asked if he owned all of the bonds, his answer was: ''Practically all''.

The insistence that it was immaterial whether McKinney paid for the land in cash or in bonds fails to take into account the rights and interests of other bondholders and also the fact that the bonds of a drainage district are not necessarily the only obligations to which assessments may be applied. Cf. Jackson v. Ludeling, 21 Wall. 616, 22 L. Ed. 492. Moreover, the contention ignores the mandate of Code Section 4362 that when any such sale is made it shall be for cash.

Manifestly this provision was not complied with in the instant case and it so affirmatively appears from the face of the record proper in the proceeding under attack. The chancellor could not lawfully have ordered a sale for anything except cash, and it necessarily follows that he had no power or authority to confirm a sale for anything but cash and no power or authority to divest and vest title upon any other form of consideration. The fact that he had jurisdiction of the subject matter and of the parties, or at least one of them, does not save the situation with respect to either. This is demonstrated by the court in the leading case of Chickamauga Trust Co. v. Lonas, 139 Tenn. 228, 234, 201 S. W. 777, 778, L. R. A.

1918D, 451 where the court clarifies the applicable rule. It is there said:

"While the rule is often broadly stated to be that a decree cannot be questioned collaterally where the court had jurisdiction over the parties and the subject-matter, the implication in such case necessarily is that the court proceeded in the exercise of a jurisdiction with which it was clothed to render judgment on the case stated or appearing by implication in the pleadings and on facts found or assumed in the decree.

"In Isham v. Sienknecht, Tenn. Ch. App., 59 S. W. 779, affirmed by this court, it was said in an opinion by the present Chief Justice of this court, speaking of a decree for the sale of land:

" 'A grave misconception may be conveyed, and no doubt is often conveyed, by the bald statement that the sale is good if the court has jurisdiction of the subject-matter and of the parties. There is an ambiguity concealed in the word "jurisdiction." . . .' "

The court then proceeds to review the authorities and show the rule to be that even though the court had jurisdiction of the parties and of the class of suits to which the particular action belongs, yet if it makes a decree not within its province as defined by law, it is void. In support of this view the opinion quotes from 15 R. C. L. 853, to the effect that a judgment may be collaterally attacked where the court had jurisdiction of the parties and the subject matter, but did not have jurisdiction to grant the particular relief which it assumed to afford to the litigants. Continuing the quotation:

"One form of usurpation of power on the part of a court in rendering a judgment is where it attempts to disregard limitations prescribed by law restricting its jurisdiction. . . . Where a court is authorized by

statute to entertain jurisdiction in a particular case only, and it undertakes to exercise the power and jurisdiction conferred in a case to which the statute has no application, in so doing it will not acquire jurisdiction, and its judgment will be a nullity and subject to collateral attack.''

A number of illustrations from the Supreme Court of the United States are given in the opinion. Among them: U. S., to Use of Wilson Walker, 109 U. S. 258, 3 S. Ct. 277, 283, 27 L. Ed. 927. In that case it was said:

''In this case the statute gave the court power, on the removal of an executor or administrator, to order the assets of the decedent, which might remain unadministered, to be delivered to the administrator de bonis non. The court made an order directing the delivery of the proceeds of administered assets. This was beyond the power conferred by the statute, and not within the jurisdiction of the court. The order was therefore void.''

Upon the same principle a decree for the sale of land in a court of chancery, without allegation of a nulla bona return, was held to be void, in the case of Isham v. Sienknecht, Tenn. Ch. App., 59 S. W. 779, upon the authority of Turley v. Turley, 71 Tenn. 171. See Campbell v. Bryant, 2 Tenn. Cas. 146; Starkey v. Hammer, 60 Tenn. 438.

A case that seems peculiarly pertinent by analogy is that of Seamster v. Blackstock, 83 Va. 232, 2 S. E. 36, 5 Am. St. Rep. 262, 264, cited with approval in support of the conclusion reached in Chickamauga Trust Co. v. Lonas, supra. In that case the county court by statute was prohibited from decreeing a sale of land by partition when the interest of any party exceeded in value the sum of $3,000.00. A decree for sale in such a case was pronounced void on the authority of Ex parte Lange, 18 Wall 163, 85 U. S. 163, 21 L. Ed. 872, 873, the record

affirmatively showing that the interest of each party exceeded in value the said sum. See Lynch v. State ex rel. Killebrew, 179 Tenn. 339, 166 S. W. (2d) 379; 49 C. J. S., Judgments, Sections 19, 421, pages 50, 824; Ætna Casualty & Surety Co. v. Board of Supr's. etc., 160 Va. 11, 168 S. E. 617; Flake v. Pretzel, 381 Ill. 498, 46 N. E. (2d) 375; Spencer v. Franks, 173 Md. 73, 195 A. 306, 114 A. L. R. 263; Nervo v. Mealey, 175 Misc. 952, 25 N. Y. S. (2d) 632; In re Chase Nat. Bank, 283 N. Y. 350, 28 N. E. (2d) 868; McLellan v. Automobile Insurance Co., of Hartford, Conn., 9 Cir., 80 F. (2d) 344; Carroll v. Berger, 255 Mass. 132, 150 N. E. 870.

In Lynch v. State ex rel. Killebrew, 179 Tenn. 339, 166 S. W. (2d) 397, the principle was applied in a habeas corpus proceeding. It was there held that a void judgment as distinguished from one that is merely voidable, is one that shows upon the face of the record proper a want of jurisdiction either of the person or of the subject matter generally, or *of the particular question attempted to be decided or the relief assumed to be given.* See also Jordan v. Jordan, 145 Tenn. 378, 239 S. W. 423 and Magevny v. Karsch, 167 Tenn. 32, 65 S. W. (2d) 562, 92 A. L. R. 343.

So in Walker v. McLoud, 204 U. S. 302, 27 S. Ct. 293, 51 L. Ed. 495, it was held that where a statute authorized the sale of property for cash, a sale on credit was absolutely void.

In Gibson v. Lyon, 115 U. S. 439, 6 S. Ct. 129, 29 L. Ed. 440, it was determined that a judicial sale confirmed by the court upon terms not authorized by law, was void, and the purchaser was without title upon which to base an action of ejectment. It is also pertinent that the invalidity of a sale which is absolutely void may be asserted against the transferee of the purchaser. 31 Am.

Jur. 527. In such a case, not even a bona fide purchaser is protected. Townsend v. Tipton, 289 Ky. 766, 160 S. W. (2d) 161, 142 A. L. R. 306.

In the present case when the chancellor undertook to divest title out of the complainants and vest it in the purchaser upon the affirmative showing that the sale was not for cash, he was assuming not only to exercise a power that was not conferred upon him by the statute which was the exclusive source of the authority for the entire proceeding, but was acting directly contrary to the statutory mandate and beyond his authority and jurisdiction. The decree was therefore void upon its face.

It is true, as the defendants insist, that the decree ordering the sale directed that it be for cash. But that is not the decree in question. It did not affect the title to the land; nor did the action of the Clerk & Master in accepting the bonds instead of cash. In a case of this kind it is the confirmation by the chancellor that constitutes the sale and there is no sale until this is done. Reese v. Copeland, 74 Tenn. 190, 192; Griffith v. Phillips, 77 Tenn. 417; Tennessee Marble & Brick Co. v. Young, 179 Tenn. 116, 123, 163 S. W. (2d) 71. The decree under attack therefore is that confirming the report of sale and divesting title out of the complainants and vesting it in the purchaser McKinney. This decree shows upon its face that the sale was not for cash.

When the purchaser failed to pay the amount of his bid in cash, the Clerk & Master should have resold the property. His act in accepting bonds and interest coupons in satisfaction of the bid was not only contrary to the decree of sale but was contrary to the law, and a nullity. That it was confirmed by the chancellor availed nothing. That which is void cannot be confirmed. Hously v. Lindsay, 57 Tenn. 651. See 31 Am. Jur. 444.

In concluding, it is proper to emphasize that the facts necessary to show the chancellor's lack of jurisdiction to confirm the sale and vest and divest title appear, as they must under the rule in this state, on the face of the record proper in the proceedings in the other case, that is, they appear from the face of the decree under attack and not only from the proof de hors the record. Wilkins v. McCorkle, 112 Tenn. 688, 708, 80 S. W. 834.

The result is that since the decree confirming the sale and divesting and vesting title was beyond the jurisdiction of the chancellor, it was void, and that decree and the Clerk & Master's deed conveying the land to McKinney, and McKinney's deed conveying it to the defendant Holder, are all clouds on the complainant's title and will be removed as such.

The complainants will also be decreed the injunctive relief prayed for in the bill. But all the relief herein granted is upon the condition that the complainants pay into the hands of the Clerk & Master for the benefit of the defendant McKinney the amount necessary to reimburse him to the extent that any sum or sums paid by him for the land operated to extinguish a valid lien against the land. See Gaylor v. Miller, 166 Tenn. 45, 51, 59 S. W. (2d) 502, and cases cited. This will include any state and county taxes paid by McKinney. Under the applicable maxim of equity, McKinney is not entitled to reimbursement of the value of the bonds turned over by him in satisfaction of his bid for the reason that this transaction did not operate to discharge the lien against the land for the delinquent drainage assessments. In the present plight of the record the amount due McKinney is not ascertainable to our satisfaction and the cause is accordingly remanded to the chancery court with the direction that an accounting be had for that purpose.

The complainants will be allowed a reasonable time to be fixed by the chancellor within which to comply with the conditions stated. If they do not comply, the bill will be dismissed upon proper application to the chancellor. The costs of the cause, including the costs of the appeal will be adjudged against the defendant, except the cost heretofore adjudged against and paid by the complainants.

Baptist and Swepston, JJ., concur.