In the Matter of THE CHASE NATIONAL BANK OF THE CITY OF NEW YORK, as Trustee, Appellant and Respondent, against GUARDIAN REALTIES, INC., Appellant, and WOODBRIDGE BUILDING CORPORATION, Respondent. (First Application.)

In the Matter of THE CHASE NATIONAL BANK OF THE CITY OF NEW YORK, as Trustee, Respondent, against GUARDIAN REALTIES, INC., Appellant. (Second Application.)

In the Matter of Supplementary Proceedings, THE CHASE NATIONAL BANK OF THE CITY OF NEW YORK, as Trustee, Respondent, against GUARDIAN REALTIES, INC., Appellant. (Third Application.)

Argued May 24, 1940; decided July 24, 1940.

Samuel J. Levinson, Benjamin J. Rabin and Frank Weinstein for Guardian Realties, Inc., appellant in first proceeding. The Special Term erroneously adjudicated, summarily and without trial, that the property produced a surplus income. (*Matter of Realty Associates, Inc.*, 267 N. Y. 91; *Matter of Realty Associates Securities Corp.*, 267 N. Y. 503; *Matter of Brooklyn Consolidated Realty Corp.*, 255 App. Div. 979; *Matter of Central Hanover Bank & Trust Co.* v. *42 Broadway R. Corp.*, 172 Misc. Rep. 606; *N. Y. Life Ins. Co.* v. *Guttag Corp.*, 265 N. Y. 292; *Central Hanover Bank & Trust Co.* v. *Eisner*, 276 N. Y. 121; *Matter of Weitling*, 266 N. Y. 184.) Section 1077-c of the Civil Practice Act does not subject an owner, who is not otherwise personally obligated to pay the mortgage debt, to personal liability for the payment of any part of the mortgage debt. Nor does such section empower the court to grant or docket a money judgment against such an owner because he fails to amortize the principal of the mortgage in an amount adjudged by the court to be proper on the basis of the surplus income produced by the property.

The sole consequence of the owner's failure to make such amortization payment is to free the mortgagee from any further statutory restraint against foreclosure under section 1077-c. (*Klinke* v. *Samuels*, 264 N. Y. 144; *City Bank Farmers' Trust Co.* v. *Ardlea Corp.*, 267 N. Y. 224; *Matter of Meng*, 227 N. Y. 264; *Matter of Pink* v. *Cord Meyer Co.*, 279 N. Y. 236; *Matter of Mortgage Commission* [*Muller Paper Goods Co.*], 256 App. Div. 301; 281 N. Y. 780; *Tuttle* v. *Clark*, 257 App. Div. 87; *Home Building & Loan Assn.* v. *Blaisdell*, 290 U. S. 398; *Wright* v. *Union Central Life Ins. Co.*, 304 U. S. 502; *Matter of Schulman* v. *Silver*, 257 App. Div. 391; *Prudence Co.* v. *160 West Seventy-third Street Corp.*, 260 N. Y. 205; *Holmes* v. *Gravenhorst*, 263 N. Y. 148; *Dime Savings Bank* v. *Altman*, 275 N. Y. 62; *Woman's Hospital* v. *Sixty-seventh St. R. Co.*, 265 N. Y. 226.) If section 1077-c of the Civil Practice Act be construed as subjecting an owner to personal liability for any part of a mortgage debt not owing by him personally, or as compelling him to surrender to a mortgagee any part of rents lawfully collected by him, the section is violative of State and Federal Constitutions. (*Saunders* v. *Shaw*, 244 U. S. 317; *Brinkerhoff-Faris Trust & Savings Co.* v. *Hill*, 281 U. S. 673; *New York & O. M. R. R. Co.* v. *Van Horn*, 57 N. Y. 473.)

*Samuel J. Levinson, Benjamin J. Rabin* and *Frank Weinstein* for appellant in second proceeding. A mortgagee who is not barred by sections 1077-a and 1077-b from maintaining an action to foreclose his mortgage or from suing on the mortgage debt, is not entitled to relief under section 1077-c. (*Tuttle* v. *Clark*, 257 App. Div. 87.) The second application was properly denied because it is based upon a four months' period and not the statutory six months' period. (*Matter of Mortgage Corp.* v. *Menan Realty Corp.*, 258 App. Div. 429; *Matter of Surgan*, 1€ N. Y. Supp. [2d] 227.)

*Samuel J. Levinson, Benjamin J. Rabin* and *Frank Weinstein* for appellant in third proceeding. An order granted

under section 1077-c, adjudicating and directing payment of surplus income in reduction of the principal of a mortgage, is not an order awarding the payment of money within the meaning of section 773 of the Civil Practice Act. (*Donohue* v. *Stein*, 250 App. Div. 126.) The pendency of the previous alleged supplementary proceeding instituted by the purported subpœna dated December 2, 1939, made the institution of the second alleged supplementary proceeding unwarranted and improper. (*Hutchinson* v. *Weston*, 160 Misc. Rep. 890; *Leer Bldg. & Const. Co.* v. *Harris*, 140 Misc. Rep. 290.)

*F. Trowbridge vom Baur* and *Theodore G. Quintal* for Chase National Bank of the City of New York, appellant and respondent in the first proceeding. The language of the statute is clear to the effect that an order directing the payment of surplus income is enforceable through the orthodox methods, with foreclosure provided as an additional remedy to become available only upon, and at the time of, the happening of a specified event. (*Hennig* v. *Abrahams*, 246 App. Div. 621; 270 N. Y. 626; *Myers* v. *Becker*, 95 N. Y. 486; *Coffin* v. *Coffin*, 161 App. Div. 215.) The purpose of section 1077-c is to require an owner to pay the surplus income directed to be paid. (*Matter of Frasch*, 245 N. Y. 174; *Archer* v. *Equitable Life Assur. Society*, 218 N. Y. 18; *People* v. *Ryan*, 274 N. Y. 149; *Cohen* v. *Neustadter*, 247 N. Y. 207; *Matter of Pink* v. *Cord Meyer Co.*, 279 N. Y. 236; *Tuttle* v. *Clark*, 257 App. Div. 87; *Matter of Mortgage Comm.* [*Muller Paper Goods Co.*], 256 App. Div. 301; 281 N. Y. 780; *Edison Electric Illuminating Co.* v. *Frick Co.*, 221 N. Y. 1; *Riggs* v. *Palmer*, 115 N. Y. 506; *Holy Trinity Church* v. *United States*, 143 U. S. 457.) An order directing the payment of money under section 1077-c must be enforceable or the entire moratorium legislation would be unconstitutional since it would thereby extinguish the mortgagee's substantive contract rights to the value of possession after default. (*Home Building & Loan Assn.* v. *Blaisdell*, 290 U. S. 398;

*State ex rel. Roth* v. *Waterfield*, 29 Pac. Rep. [2d] 24; *Virginian Joint Stock Land Bank* v. *Hudson*, 266 Mich. 644; *Youngs* v. *Burleson*, 264 N. W. Rep. 317; *Lund* v. *Eggleston*, 279 N. W. Rep. 546; *Metropolitan Life Ins. Co.* v. *Morris*, 159 So. Rep. 388.) The special proceeding authorized by section 1077-c, being a quasi-foreclosure proceeding, is equitable in nature and is governed by equitable principles. (*Home Building & Loan Assn.* v. *Blaisdell*, 290 U. S. 398; *Monaghan* v. *May*, 242 App. Div. 64; *Honeyman* v. *Jacobs*, 306 U. S. 539; *Tompkins County Trust Co.* v. *Herrick*, 171 Misc. Rep. 929; *Syracuse Trust Co.* v. *Corey*, 167 Misc. Rep. 506; *Home Owners' Loan Corp.* v. *Wood*, 164 Misc. Rep. 215.) Relief under section 1077-c may be obtained against Woodbridge. (*Lowendahl* v. *Baltimore & Ohio R. R. Co.*, 247 App. Div. 144; 272 N. Y. 360; *Berkey* v. *Third Ave. Ry. Co.*, 244 N. Y. 84; *Rapid T. Subway Constr. Co.* v. *City of New York*, 259 N. Y. 472; *Floral Park Lawns, Inc.*, v. *O'Connell*, 250 App. Div. 464; *Matter of Realty Associates, Inc.*, 267 N. Y. 91; *Matter of Pink* v. *Cord Meyer Co.*, 279 N. Y. 236.) The surplus income was properly computed. (*Matter of Realty Associates, Inc.*, 267 N. Y. 91; *Matter of Realty Associates Securities Corp.*, 267 N. Y. 503; *Sheepshead Bay Bungalow Corp.* v. *Mandel & Co.*, 244 App. Div. 811; *Central Nat. Bank* v. *Marks*, 243 App. Div. 526; *New York Trust Co.* v. *Gude*, 246 App. Div. 784; *Syracuse Trust Co.* v. *Corey*, 167 Misc. Rep. 506.) Taxes other than real estate taxes have been uniformly disallowed by the courts as improper deductions under section 1077-c. (*Matter of Pink* [ *Kayares Theatricals, Inc.*], 252 App. Div. 759; *Matter of Central Hanover Bank & Trust Co.* v. *42 Broadway Realty Co.*, 172 Misc. Rep. 606.)

*F. Trowbridge vom Baur* and *Theodore G. Quintal* for respondent in second proceeding. The bank has clear rights under section 1077-c, and the receiver has no rights, to an inspection of the books respecting the surplus income which accrued prior to the receiver's appointment. (*Ebling Co.* v. *Trinity Estates; Inc.*, 266 N. Y. 175; *New York*

*Life Ins. Co.* v. *Fulton Development Corp.*, 265 N. Y. 348; *Dime Savings Bank* v. *Altman*, 275 N. Y. 62; *Woman's Hospital* v. *Sixty-seventh St. R. Co.*, 265 N. Y. 226; *Matter of Wickings*, 162 Misc. Rep. 357; *Levraad Realty Corp.* v. *Ogden, Inc.*, 226 App. Div. 675; *Sullivan* v. *Rosson*, 223 N. Y. 217.)

*F. Trowbridge vom Baur* and *Theodore G. Quintal* for respondent in third proceeding.

*Max Schmer* for Woodbridge Building Corporation, respondent in first proceeding. Under section 1077-c of the Civil Practice Act an application by a mortgagee to recover from the owner of property surplus moneys can only be made against the present owner and can, in any event, only relate to surplus income derived from the property for six months prior to the return date of the application. (*Matter of Schulman* v. *Silver*, 257 App. Div. 391; *Matter of Mortgage Corp.* v. *Menan Realty Corp.*, 258 App. Div. 429; 282 N. Y. 724; *Matter of Surgan*, 18 N. Y. Supp. [2d] 227.)

FINCH, J. These are three cases in which the appeals have been argued together. They arise out of the same facts and present the same major question, whether section 1077-c of the Civil Practice Act, which is part of the mortgage moratorium legislation in this State, imposes upon the last record owner who was not on the bond and who has not assumed its obligations, personal liability to pay to the mortgagee the amount of the surplus over and above taxes, interest and carrying charges produced during a six months' period.

The Chase National Bank of the City of New York is the holder, as trustee, of a second mortgage upon certain premises of which Guardian Realties, Inc., is the last record owner. On December 31, 1938, Guardian acquired the property without assuming the mortgage, by grant from the Woodbridge Building Corporation, which in turn had acquired the property in 1931 from the 100 William Street Corporation, the mortgagor. Default in amortization

of the principal was made on April 1, 1937. Pursuant to section 1077-c, Chase made an application on June 22, 1939, to determine the surplus produced by the property for the period June 1, 1938, to May 1, 1939. This is the first such application made by Chase which sought relief against both Guardian and Woodbridge. On September 11, 1939, Special Term handed down an opinion which granted Chase's application as to Guardian, but only for the period January 1, 1939, to June 30, 1939. As to Woodbridge, Chase's application was denied altogether because it was not the last record owner. An examination of Guardian's books followed and as a result of a series of orders it was determined that Guardian had derived a surplus for the period mentioned above of $20,841.60, and that Chase was entitled to enter a money judgment against Guardian for that amount. From the affirmance of these orders Guardian appeals. Chase appeals from so much of the order of the Appellate Division as affirmed the denial of its application for relief against Woodbridge. These appeals constitute the first case.

On November 17, 1939, Chase made a new application for the determination of the surplus for the period June 30, 1939, to November 1, 1939, but only against Guardian. Guardian appeals upon questions certified to this court by the Appellate Division which granted the application and reversed the order of Special Term denying Chase's second application. This is the second case.

Pursuant to sections 773 *et seq.* of the Civil Practice Act, Chase, by service of a subpœna, commenced supplementary proceedings to enforce its judgment against Guardian, obtained as a result of the first application made by Chase for the determination of surplus moneys. Guardian appeals upon certified questions from the order of the Appellate Division affirming the order of Special Term which denied Guardian's motion to vacate the subpœna. This is the third case.

*First case. Guardian's appeal.* Stated briefly, the major question upon this appeal is whether the last record owner

of property, subject to a bond and mortgage as to which default has been made in the principal, is personally liable to the mortgagee for the amount of the surplus in excess of taxes, interest and carrying charges. Guardian also raises the point that the amount of the surplus has been improperly determined.

Personal liability for the accrued surplus depends upon the proper construction of section 1077-c of the Civil Practice Act.

The argument of Chase is to the effect that when the Legislature granted a moratorium to the property owner and prevented the mortgagee from foreclosing, the Legislature was constitutionally bound to afford the mortgagee the equivalent of the possessory value of the realty upon which he has a lien as security for the debt. This is said to require that the mortgagee be entitled to whatever surplus is produced by the mortgaged premises and that the property owner who remains in possession be personally accountable for the amount of the surplus as it accrues from time to time. The argument is pressed upon us that if the statute be construed as not providing for such personal liability on the part of the owner in possession, then the moratory legislation is unconstitutional. (Cf. *Home Building & Loan Assn.* v. *Blaisdell*, 290 U. S. 398; *Worthen Co.* v. *Thomas*, 292 U. S. 426, 432–434; *Worthen Co.* v. *Kavanaugh*, 295 U. S. 56, 63; *Wright* v. *Vinton Branch*, 300 U. S. 440.) Whatever may be the merits of the constitutional question, the case at bar presents the narrower inquiry as to whether the Legislature in fact has intended to create such a new obligation on the part of the property owner. If the Legislature has not so intended, and if Chase be correct in its argument on the constitutional question, still Chase would not be entitled to obtain the relief which it seeks in this proceeding, for it is not within the province of this court to rewrite the enactments of the Legislature. The constitutional question must remain until such time as it is raised in an appropriate case. (Cf. *Great Falls Mfg. Co.* v. *Attorney-General*, 124 U. S. 581.)

In support of its position, Chase relies upon part of the concluding clause of the first sentence of section 1077-c, which provides that " then the court may make an order directing the payment of such surplus   *   *   *."

It is urged that by force of the term " an order directing " a party to pay a sum of money, there is necessarily comprehended personal liability of the party against whom the order is directed.  On the other hand, Guardian contends that there is no personal liability imposed by an order under section 1077-c and that the court in making such an order only provides a condition for the continuance of the moratorium.  In the event of default, the owner in possession becomes subject to any action which the mortgagee may pursue in the absence of the moratorium.

It is a familiar canon of interpretation that the several parts of a statute are to be read together in ascertaining the legislative intent and, further, that remedial legislation designed to correct a condition must be construed in the light of the circumstances and the law theretofore existing. (*City Bank Farmers Trust Co.* v. *Ardlea Incorporation,* 267 N. Y. 224.)

Let the statute be applied to this test.  Prior to the enactment of the moratory legislation, a mortgagee, upon default, might foreclose the mortgage and obtain personal judgment against those liable on the bond, but the owner in possession who had not assumed the obligations of the bond was under no personal liability and was entitled to the rents and profits.  The mortgagee was not entitled to the rents and profits until he had in some way reduced them to possession, generally by the appointment of a receiver.  (*Sullivan* v. *Rosson,* 223 N. Y. 217; *Womans Hospital* v. *67th Street Realty Co.,* 265 N. Y. 226, 233.  Cf. *Dime Savings Bank* v. *Altman,* 275 N. Y. 62.)

Such was the law when the Legislature determined that the existence of an emergency required relief for the benefit of distressed property owners.  (Laws of 1933, ch. 793. Cf. Laws of 1933, ch. 794.)  A moratorium for the duration of the emergency has been provided for property owners

who are able to pay at least taxes, interest and carrying charges. Actions to foreclose the mortgage are stayed by the terms of section 1077-a of the Civil Practice Act, and actions to recover on the bond are stayed by the terms of section 1077-b. But the Legislature recognized that, despite the emergency prevailing generally, there would be particular instances where the property would produce an amount in excess of taxes, interest and carrying charges. Accordingly, the moratory statute provides that although its benefits are available generally, none the less in a proper case a mortgagee may be relieved of the stay imposed by the moratorium. Section 1077-c provides that "notwithstanding the foregoing provisions," i. e., sections 1077-a and 1077-b, if, upon an application to a court, it be determined that property has produced a surplus for a period of six months prior thereto, "then the court may make an order directing the payment of such surplus or such part thereof as the court may determine to the mortgagee to apply toward the reduction of any past due principal. In the event of default in making of such payment * * * then and in such event the applicant may maintain an action to foreclose such mortgage. In any such proceeding the court may enter an order permitting foreclosure without other proof if the owner of the property shall fail to make available for inspection by the mortgagee and the court all records and data available as to the income and disbursements, or if the owner shall fail to produce adequate records or data of income and disbursements."

The design of the statute is clear when the several parts are read in sequence. The first two sections provide that where the property owner protects the value of the security by paying taxes and carrying charges, and pays for the use of the loan by meeting interest charges, then the owner is not to be ousted from possession on account of default in the payment of the principal. The next section provides that if the particular parcel produces more than is required for interest and carrying charges, and if the owner fails to apply such surplus to the principal due on the mortgage,

" then and in such event " the mortgagee may foreclose the mortgage. That is the only consequence which the Legislature has chosen to attach to the default of the last record owner in making the payment determined by the court. The Legislature has first suspended the right to foreclose for default in the principal, and second, provided the condition upon which the mortgagee may proceed with foreclosure for default in payment of the principal notwithstanding the moratorium. The argument of respondent Chase imputes to the Legislature an intent to provide that, upon default, the right to the rents and profits *ipso facto* is transferred to the mortgagee. This view is negatived by the very language of section 1077-c. Thus, the section provides that in the event of default in making payment of the surplus as determined by the court, the mortgagee may proceed with foreclosure proceedings. The section also provides that if the last record owner in possession obstructs the efforts of the mortgagee or of the court to determine the existence and the amount of the surplus, then regardless of whether or not such a surplus exists, the mortgagee may proceed to foreclosure. To construe the statute as imposing personal liability upon the last record owner for the amount of the surplus, would create an anomalous situation. The last record owner, who not only has failed to pay the amount of the surplus as determined by the court but who has refused even to make available for inspection the very records and data necessary for the computation is subject only to foreclosure, but is not liable personally. Obviously the Legislature did not intend to impose a greater liability upon the owner who at least co-operates by furnishing the necessary information than upon the owner who fails to co-operate at all. Further, the very clause upon which respondent Chase relies does not at all events entitle the mortgagee to the whole of such surplus, but only to " such surplus or *such part thereof as the court may determine.*" This, too, negatives any intent upon the part of the Legislature absolutely to invest the mortgagee with the right to the rents and profits before

he has taken possession thereof. And there is still a further obstacle which would arise in the application of the statute. The Legislature has made no provision as to which of the several mortgagees is entitled to the rents and profits, and yet, under the statute as read by respondent Chase, each mortgagee might obtain a personal judgment against the last record owner for the amount of the rents and profits. Had the Legislature intended to require the last record owner to act as the equivalent of a receiver of the rents and profits as a condition for the moratorium, there would have been some statutory provision indicating the manner in which the owner should apportion the surplus among the several mortgagees, for surely it cannot be that the Legislature would render the owner liable to each mortgagee for the amount of the surplus. There is no alternative to this predicament if the statute, as now written, be construed to impose personal liability.

Not only does the argument of the mortgagee run counter to the specific provisions of the statute, but it is also contrary to the general purport of the statute. The right to rents and profits ordinarily is an incident of the ownership of land, yet it is contended that by the very legislation which was intended to protect property owners in their possession of land, property owners were deprived of one of the most important attributes of ownership. This contention is supported by extracting from its context a portion of a sentence. Even if it were conceded that the single clause is ambiguous when standing alone, the meaning sought to be elicited from it by respondent Chase is negatived by the language which both precedes and follows the clause in question. Had the Legislature intended so radical a change in property relationships, surely the intent would be expressed in a more forthright manner. The general purport of the legislation, the sequence of its several sections, the explicit language and the anomalous consequences which would follow from the suggested interpretation, all refute the argument that it was intended to invest the mortgagee with the right of ownership of the rents and

profits. The statute, read simply, provides only that upon default in making such payment as is determined by the court, the owner in possession loses the benefit of the moratorium and is relegated to such rights as he may have in the absence of the moratory legislation.

Computation of the surplus. Guardian contends that Special Term erred in determining as a matter of law that certain items be included as income, and that certain others be excluded from the allowable disbursements. We proceed to a consideration of these items.

Interest on the third mortgage. Guardian seeks to be credited with the interest on the purchase-money mortgage which it executed in favor of Woodbridge. Respondent Chase contends that the mortgage in question is fictitious, and further, that since it was executed subsequent to July 1, 1932, it is expressly excluded by section 1077-g, entitled "Mortgages not affected," wherein it is provided that all mortgages executed after July 1, 1932, are excluded from the operation of the several sections of the moratory statute, including section 1077-c. The purchase-money mortgage, constituting a third mortgage on the property, was executed on or about December 31, 1938. Respondent Chase apparently concedes that interest on a junior mortgage, executed prior to July 1, 1932, would be deductible. Appellant Guardian contends that, if the reasons advanced by Chase be correct, interest on a mortgage executed after July 1, 1932, would not be deductible even though the mortgage constituted a superior lien. Whether it would be proper to deduct interest on a junior mortgage executed prior to July 1, 1932, or on a mortgage executed after that date but constituting a superior lien, need not now be decided. At present it is sufficient to determine that interest on a junior mortgage executed after July 1, 1932, is not deductible. If interest on such mortgages were to be deducted in determining surplus, then the rights of mortgagees holding superior liens would be impaired. It is the plain intent of the statute to protect property owners from foreclosure of mortgages existing as of July 1, 1932. As

to mortgages executed after that date, no restraint has been imposed upon the right of the mortgagee to foreclose. Thus, as to a junior mortgage executed after July 1, 1932, the owner in possession would be liable to lose the property for default in the payment of principal as well as of interest, and the argument used to justify the deduction of interest in order to prevent foreclosure by the third mortgagee is equally applicable to payments made in meeting the principal charges of the junior mortgage, a result clearly not intended and not warranted by the statute.

Social security and unemployment insurance taxes. These items have not been allowed as deductions. Respondent Chase argues that only real estate taxes are deductible, but does not deny that wages and salaries of building employees are deductible. Whether or not unemployment insurance and social security taxes are " taxes " within the meaning of the term in the phrase " taxes, interest and all other carrying charges," these items are included in the concept of carrying charges, for they are levies upon payrolls, and are an incident to the expense of engaging employees. Items in this category should be allowed as deductions upon proper proof of the expenditure having been made.

As to the numerous other detailed items, it is sufficient to say that upon this record Special Term was warranted in ruling as it did.

*Chase's Appeal.* Appellant Chase seeks to maintain a surplus-money proceeding against Woodbridge, which was not the last record owner of the property. Although the dissent in the Appellate Division concerns only so much of the order as related to Guardian, Chase may appeal as of right. The situation is analogous to that concerning modifications and is governed by the same rule. (*Gambold* v. *MacLean,* 254 N. Y. 357, 362; Cohen on the Powers of the New York Court of Appeals, p. 134.)

Appellant Chase relies upon the decision of this court in *Matter of Pink* v. *Cord Meyer Co.* (279 N. Y. 236) for the proposition that a surplus-money proceeding may be main-

tained against a prior owner. A reading of the opinion in that case discloses that the question there presented concerned the right of a mortgagee to apply under section 1077-c against the owner of the fee and the lessee where both had executed the mortgage. For the purposes of the statute, each was the last record owner. Appellant Chase seeks to proceed against the prior owner in connection with its argument discussed upon Guardian's appeal, to the effect that section 1077-c imposes personal liability for the amount of the surplus. The statute is explicit in limiting surplus-money proceedings to the last record owner. Further, such a proceeding against a prior owner would be pointless inasmuch as he is no longer in possession and the loss of possession is the sole consequence of default in making the payment directed by the court in such a proceeding. Appellant Chase also seeks to hold Woodbridge upon the theory that the latter corporation is but the *alter ego* of Guardian. The relationship between Guardian and Woodbridge need not now be determined for if appellant Chase be correct in its view, any judgment obtained against Guardian may be enforced against Woodbridge upon proof which would warrant disregarding the corporate entity.

*Second case.* This involves the second surplus-money application by Chase, and covers the period from June 30, 1939, to November 1, 1939. The Appellate Division has certified two questions, *first*, whether a surplus-money proceeding may be brought by a mortgagee who is already entitled to maintain an action to foreclose, and *second*, whether a surplus money application may be made in regard to a period of less than six months.

Section 1077-c explicitly provides that an application for the determination of the surplus must be made for the period of six months prior to the application. Since this is a statutory proceeding, it is clear that there is no alternative but to require that an application must cover a six months' period. The Legislature was unquestionably empowered to adopt a reasonable procedure, and compliance therewith

may not be evaded. (*Matter of Mortgage Corp.* v. *Menan Realty Corp.*, 258 App. Div. 429; affd., 282 N. Y. 724.) It follows that the second question must be answered in the negative and, accordingly, the first question need not be answered.

*Third case.* This involves supplementary proceedings by Chase to enforce the personal judgment entered as a result of the orders in the first surplus-money application. The Appellate Division has certified three questions, *first*, whether section 1077-c authorizes the entry of a money judgment in favor of the mortgagee; *second*, whether section 1077-c violates the State and Federal Constitutions if it be construed to authorize the entry of a money judgment; and, *third*, whether the motion to vacate the subpœna was improperly denied for the reason that a prior subpœna and supplementary proceeding were pending.

Chase contends that the first and second questions should not be answered because to do so would allow a collateral attack upon a judgment. However, this argument overlooks the fact that while a judgment may not be attacked collaterally, for mere errors or irregularities, none the less it is open upon collateral attack to deny the jurisdiction of the court to enter such a judgment. In view of the determination of the appeal of Guardian in the first case, the first certified question should be answered in the negative. The second and third questions, therefore, need not be answered.

In the first case, upon the appeal of Guardian Realties, Inc., the orders of the Appellate Division and the orders of the Special Term should be reversed, without costs, and the matter remitted to the Special Term for further proceedings not inconsistent with this opinion; upon the appeal of Chase National Bank the orders of the Appellate Division and of the Special Term should be affirmed, with costs to respondent Woodbridge.

In the second case the order of the Appellate Division should be reversed and that of the Special Term affirmed, without costs. The second question is answered in the negative. The first question is not answered.

In the third case the orders of the Appellate Division and of the Special Term should be reversed and the motion to vacate the subpœna granted, without costs. The first question is answered in the negative. The second and third questions are not answered.

In the first case, LOUGHRAN, RIPPEY, SEARS, LEWIS and CONWAY, JJ., concur; LEHMAN, Ch. J., concurs as to the exclusion of interest on purchase money mortgage only on the ground that the evidence is sufficient to sustain a finding that the mortgage was not made in good faith.

In the second and third cases, LEHMAN, Ch. J., LOUGHRAN, RIPPEY, SEARS, LEWIS and CONWAY, JJ., concur.

Ordered accordingly.