In the Matter of the Application of TITLE GUARANTEE AND TRUST COMPANY, Petitioner, Respondent, for an Order Directing FOX-VALE REALTY CORPORATION, INC. Appellant, Last Record Owner of Premises 1475–9 Jessup Avenue, Borough of Bronx, City and State of New York, to Pay the Surplus Income of Said Premises for the Six Months Period Ended July 31st, 1940, to TITLE GUARANTEE AND TRUST COMPANY, the Holder of the First Mortgage Lien Thereon, for Application on Account of the Past Due Principal of Said Mortgage, and in Default Thereof, for Leave to Foreclose Its Said Mortgage, All Pursuant to Section 1077-c of the Civil Practice Act.

First Department, March 7, 1941.

*David Stein* of counsel [*Jesse Starkman* with him on the brief; *Arthur Knox*, attorney], for the appellant.

*C. Elmer Spedick* of counsel [*John C. O'Malley* with him on the brief; *C. Elmer Spedick*, attorney], for the respondent.

CALLAHAN, J.  Appellant is the owner of a five and one-half story apartment house in the Bronx.  Petitioner-respondent is the holder of a past due first mortgage on said premises, which mortgage is subject to the mortgage moratorium laws of this State.  The question to be determined on this appeal is whether Special Term correctly granted an order directing the owner to pay the sum of $3,000 in reduction of the principal of the mortgage debt based on the existence of a surplus of income over carrying charges in the six months' period between February 1, 1940, and July 31, 1940. The principal point in dispute relates to the period of time to which the court should have confined its inquiry in ascertaining whether a surplus existed.

On the 31st day of August, 1940, the mortgagee served a demand on the owner that the latter produce its books in court on September 9, 1940, for inspection for the purpose of ascertaining the income and carrying charges for the six months ending July 31, 1940. The owner thereupon wrote the mortgagee that inspection of the books could be had at the office of the owner, at the mortgagee's convenience, and suggested that a new date be fixed for the examination.  Subsequently, it was agreed that, because of the alleged illness of the owner's bookkeeper, the examination be adjourned to September 23, 1940.  Upon the date so fixed, an examination of the books was had relating to the six months ending July 31,

1940, and a surplus was claimed by the mortgagee. Upon the owner's refusal to pay this alleged surplus, a petition was addressed to the Supreme Court for an order, pursuant to section 1077-c of the Civil Practice Act, requesting the payment thereof. This petition was dated October 23, 1940, and was accompanied by a notice of motion returnable October 29, 1940. The owner appeared in court on the return day and moved to dismiss the petition on the ground that the only remedy available to the mortgagee under section 1077-c related to any surplus which might be shown to exist in the six months' period immediately prior to the date of the application to the court.

Special Term made what it called an "intermediate" order directing that the income and surplus between July 31, 1940, and October 1, 1940, be disclosed to the court. After these additional facts were revealed, Special Term made a final order in which it directed the payment of $3,000 out of surplus, basing its determination, however, solely on income and carrying charges during the six months ending July 31, 1940. Both the so-called "intermediate" order as well as the final order have been appealed from. The appellant-owner contends that the court was in error in considering the existence of a surplus during the six months' period ending July 31, 1940, for the reason that under the statute the existence or non-existence of a surplus must depend upon receipts and disbursements "during the six months prior to the application" to the court, which would mean the six months prior to October 29, 1940. The owner further contends that in any event the court should not have considered receipts and disbursements for any period earlier than the six months ending September 23, 1940, the latter being the date on which the owner's books were actually examined by the mortgagee. In order to meet like contentions before the Special Term, the mortgagee submitted affidavits to that court, which are contained in the papers on appeal, showing that it had served two prior notices similar to that of August 31, 1940. Its first notice was served August 15, 1939, and pursuant thereto it examined the owner's books from February 1, 1939, to July 31, 1939. The second notice was served on February 7, 1940, and upon this notice examination was had of the owner's books for the six months ending January 31, 1940. It is apparent that the reason that the owner contends that the period up to September 23, 1940, should be taken into consideration is that no surplus would exist if that period were considered. It appears, however, that this is due to the fact that the owner paid taxes for the second half of 1940 between July 31, 1940, and September 23, 1940, or somewhat in advance of their due date. Taxes for the first half of

1940 had already been included in the six months' period which the examination covered.

Special Term found a surplus of $4,943.65 in the period between February 1 and July 31, 1940. In arriving at this figure, however, the court failed to give credit to the owner for disbursements aggregating $1,850, which should have been allowed. On the other hand, it improperly permitted the owner to keep $2,000 as a "reserve." If proper allowances had been made, it is conceded that a surplus of $3,093.65 would have existed. As Special Term directed only the payment of $3,000 surplus to the mortgagee, the order which it made was warranted if the court was correct in considering the period from February 1, 1940, to July 31, 1940, in ascertaining the existence of a surplus. We think that the use of this period as the basis of the court's calculations was proper under the facts presented and the law applicable thereto.

Section 1077-c, which is part of the mortgage moratorium statutes, provides for an application to any court in which a foreclosure action may be brought for an order directing an owner to pay any surplus of income over carrying charges during the six months prior to the application to the court. While no procedure is set up in the statute for the examination of the owner's books other than in court, it is quite evident that the parties may arrange for such an examination out of court. If the data thus produced on consent reveals a surplus, the court may be called upon to make an order for its payment. If the mortgagee is satisfied from the examination thus arranged that no surplus exists, the matter may be dropped without litigation. The wisdom of this procedure on the part of owner and mortgagee was pointed out in the case of *Matter of Mortgage Commission* v. *Salisch* (248 App. Div. 739). Clearly there is nothing in the statute prohibiting such an examination by consent of the parties. When conciliatory procedure is followed, the court should seek to uphold it, for the law favors compromise. In the present case regular periodical examinations were had for two six months' periods prior to the one under consideration. The earlier examinations were from February 1, 1939, to July 31, 1939, and from August 1, 1939, to January 31, 1940. In each case a request for permission to examine the books was made in the calendar month following the period to be covered by the examination. We may take judicial notice of the fact that bookkeeping methods do not always provide for immediate posting of entries concerning business transactions, and surely examinations which were sought as promptly as were the present ones, were diligently procured under the circumstances. When examinations are had by consent in the manner above referred to, especially when they cover successive semi-annual periods, it is plain that

the parties acquiesce in testing the existence of a surplus by reference to the period covered by the examination. If there is a dispute concerning the existence of any such surplus and prompt application is made to the court after such dispute arises, orderly procedure requires the court to consider the same period which the parties considered in their examination, and concerning which the dispute arose. To interpret the language of section 1077-c so as to require the court to consider a different period, i. e., the six months immediately prior to the date when an application comes before the court, would be placing entirely too narrow a construction on the statute. Such interpretation would require application to be made to the court in every case without any reliable information as to whether any surplus existed. The present owner, in effect, recognizes the right of the court to consider the period to which an examination by consent relates, for it states that at least the six months should run from the date of actual examination of its books. We think that the proper six months' period was considered by the court here, i. e., that ending July 31, 1940. If the court had taken September 23, 1940, as the last date, it would be required to start the examination as of March 23, 1940. This would involve the consideration of receipts and disbursements for parts of two months, which would be very difficult where the accounts covered monthly rents. In addition, it would leave uncovered a period between the present and the earlier examination. A like situation would arise if October twenty-ninth were considered as the last date of the six months' period. Here the examination had pursuant to notice covered a specified period of six calendar months, ending on the last day of the month preceding the month in which the notice was given.

While the statute may not be construed so as to permit either side to select an arbitrary period of six months to suit its own purpose or to defeat the object of the statute, no such situation exists here. The mortgagee did not select any period arbitrarily when it arranged to have regular examinations every six months, which examinations were to be held shortly after the expiration of the respective periods. When parties have thus agreed to have the examination cover a particular six months, they must be assumed to have consented to have that period considered as the six months " prior to the application " to the court within the meaning of section 1077-c, if it becomes necessary to apply to the court to settle any dispute concerning the existence of a surplus.

*Matter of Mortgage Corp.* v. *Menan Realty Corp.* (258 App. Div. 429; affd., 282 N. Y. 724) does not hold contrary to our present views. There it was pointed out that the mortgagee had examined the owner's books on November 22, 1938, for the six months' period

from May 1, 1938, to November 1, 1938. No application was made to the court for the claimed surplus until June, 1939, or more than seven months after the examination. The court quite properly pointed out that such delay might seriously prejudice the mortgagor's rights and defeat the object of the moratorium laws. We had no comparable delay in the present case. Here demand was made in August, 1940, for examination for the period ending July 31, 1940. The examination was delayed to suit the owner's convenience to September 23, 1940. In the interim the owner paid taxes in advance. If after a delay is obtained by him, an owner may make payments and thus prevent the existence of a surplus, the matter could be controlled by the actions of one of the parties. If we construe the statute to limit the examination as contended for by appellant, like situations would arise.

In this case, within a month after completion of the examination, application was made for the claimed surplus. Certainly the mortgagee moved with reasonable celerity considering all the circumstances. To hold that there has not been compliance with the law here, because the issue as to the existence of a surplus was confined to the six months ending July 31, 1940, would mean that every mortgagee would be compelled either to have partial examination with the resulting doubt as to whether a surplus would exist, or to resort to court at the end of every six months. Even if such a procedure were adopted, there would be difficulty in complying with the letter of the statute if we insisted on a literal construction of the words " during the six months prior to the application."

We deem that the more liberal construction followed by Special Term in confining the issue to the six months ending July 31, 1940, was wholly warranted in this case, especially in view of the conduct of the parties.

The final order appealed from should be affirmed, with twenty dollars costs and disbursements, and the appeal from the so-called " intermediate " order dismissed.

MARTIN, P. J., and TOWNLEY, J., concur; DORE and COHN, JJ., dissent and vote to reverse both orders.

DORE, J. (dissenting). The primary issue on this appeal is whether, on application by a mortgagee under section 1077-c of the Civil Practice Act, the court may direct payment of a surplus for a six months' period that had expired three months before the mortgagee's application to the court. That section, so far as here relevant, provides that notwithstanding the moratorium legislation any one who would otherwise have the right to foreclose a mortgage has the right " to make an *application to any court*

in which such foreclosure action might be brought upon eight days' notice, * * * and if upon such application it shall appear to the satisfaction of the court that the mortgaged property during *the six months prior to the application* shall have produced a surplus " over taxes, interest and carrying charges, the court may direct the payment of such surplus or a part thereof to the mortgagee to apply to the reduction of any past due principal. (Italics mine.)

Appellant, Foxvale Realty Company, also known as Foxvale Realty Corporation, Inc., is the owner of a five and one-half story apartment house in the Bronx. Respondent Title Guarantee & Trust Company is the holder of a first mortgage on the premises in the sum of $178,000 which became due July 1, 1937. On August 31, 1940, the mortgagee served notice on the owner to produce the owner's books and records on September ninth for inspection to reveal the income and expense from the mortgaged premises for the six months' period beginning February 1, 1940, and terminating July 31, 1940. The owner consented to examination of its books for the purpose of determining whether or not there was a surplus, as it had consented to two prior examinations covering two prior six months' periods, viz., from February 1, 1939, to July 31, 1939, and from August 1, 1939, to January 30, 1940. After completing its last examination in September, 1940, the mortgagee on October 23, 1940, made application to Special Term for an order directing the owner to pay the mortgagee an alleged surplus of $4,943.65 claimed to have accrued in the six months' period from February 1, 1940, to July 31, 1940, and asked that such surplus be applied on the past due principal of the mortgage pursuant to the provisions of section 1077-c. The owner asked that the application be denied on the statutory ground that the six months' period designated by the mortgagee was not the six months prior to the application to the court, but a period that had expired almost three months before the making of the application; and also claimed a deficit for the six months immediately prior to the October application.

The court on November 26, 1940, by an intermediate order directed that the motion be held in abeyance and ordered the owner to make available to the mortgagee its records showing income and expenses from July 31, 1940, to October 1, 1940, to aid the court in determining any surplus which should be applied to the past due principal. That further examination of the owner's books was also had. Thereafter by order dated January 3, 1941, Special Term on all the papers found that for the period from February 1, 1940, to July 31, 1940, there was a surplus of $4,943.65 and directed the owner to pay $3,000 thereof to be applied on the principal of the mortgage.

The owner appeals from this order and also from the intermediate order directing examination for the two months of August and September, 1940. We think that the order directing payment of the surplus for a period expiring three months prior to the application and the intermediate order appealed from were erroneous and should be reversed.

The proceeding is statutory and in view of the moratorium legislation, the application for payment of a surplus could not be allowed except for the provisions of section 1077-c. The section expressly states that an application thereunder for payment of a surplus relates to " the six months prior to the application." The statutory provisions show that the " application " referred to is the application made to the court, not, as the mortgagee erroneously contends, any prior notice or demand made upon the mortgagor for an examination to determine the facts relating to payment of a claimed surplus.

The cases follow the language of the statute. In *Chase National Bank* v. *Guardian Realties, Inc.* (283 N. Y. 350, 367) the Court of Appeals held that a surplus money application may not be made for a period of less than six months and said: " Section 1077-c explicitly provides that an application for the determination of the surplus must be made for the period of six months prior to the application. Since this is a statutory proceeding, it is clear that there is no alternative but to require that an application must cover a six months' period. The Legislature was unquestionably empowered to adopt a reasonable procedure, and compliance therewith may not be evaded."

In *Matter of Mortgage Corp.* v. *Menan Realty Corp.* (258 App. Div. 429) the Appellate Division of the Second Department has held that under section 1077-c the surplus may be reached only for the period mentioned in the statute and not for any six months' period preceding the application which may be selected by the mortgagee. In that case the six months' period terminated seven months prior to the application to the court. The ruling of the Appellate Division reversing an order directing the owner to pay a claimed surplus to the mortgagee was affirmed without opinion by the Court of Appeals (282 N. Y. 724 [March 15, 1940]).

The mortgagee contends that because the mortgagee's notice called for a designated six months' period and the owner freely permitted an examination of its books for such period and had consented to similar examinations for two prior six months' periods, a course of conduct consented to by the owner and waiver of any objection were shown. The Special Term appears to have adopted this view. But the application was made not on August 31, 1940,

when the mortgagee gave notice and demand to examine the books, but in October, 1940, when the application was made to the court. On the return day of the motion, October 29, 1940, the owner asked denial of the application on the statutory ground relating to the proper six months' period. There was no waiver or acquiescence.

It is urged that because of the size of the building, the examination of the books and records and the preparation of a statement of expense and income require several weeks. Where, as here, the owner was perfectly willing to permit a full examination of its books and records, the mortgagee could easily have demanded such examination for a named six months' period and prior to the court application could have procured such examination a month or three weeks before the termination of such period. The facts and figures for practically the whole of the six months could at that time be determined accurately; the income and fixed charges for the remaining few weeks would by that time be easily ascertainable; and after such examination, the mortgagee would be in a position to move for the surplus claimed to be shown with complete accuracy or with reasonable certainty. In any event, as was pointed out in the *Menan* case, the owner may be required to produce his records upon the return day of the application to the court for inspection by the mortgagee and the court. (*Matter of Mortgage Corp.* v. *Menan Realty Corp.*, *supra*, at p. 431; *Matter of Mortgage Commission* v. *Salisch*, 248 App. Div. 739.)

We do not say that designating a six months' period ending the day notice is served of application to the court instead of on the return day of such motion would necessarily be defective. That narrow issue is not presented by this record and need not here be passed upon. On the facts disclosed in this record, however, we think the court was without authority to grant this application for a designated six months' period that had concededly expired almost three months before either the date of service of the notice of motion or the return day of the application to the court. In view of our recommendation on this issue it is unnecessary to consider the other questions raised.

Accordingly we vote to reverse the orders appealed from with costs and disbursements.

COHN, J., concurs.

Order entered January 4, 1941, affirmed, with twenty dollars costs and disbursements. Appeal from intermediate order dismissed.