SOUTHOLD SAVINGS BANK, Respondent, *v.* A. EDWARD FISHER, Appellant.

Supreme Court, Appellate Term, Second Department, December 15, 1944.

*Michael M. Helfgott* and *William Bernstein* for appellant.

*Martin Granirer* for respondent.

STEINBRINK, J. Both parties moved for summary judgment in an action by the owner and holder of a bond secured by a mortgage on real property to recover, among other items, 2% of the principal alleged to be due by virtue of section 1077-g of the Civil Practice Act. The bond dated December 22, 1925, in the principal sum of $12,000, was payable one year later with interest at 6% per annum. It contains a provision for the amortization of a portion of the principal over a period of five years. At the time of the commencement of the action the unpaid principal amounted to $7,625. The answer contains denials and an affirmative defense which alleges in substance that in a prior action between the same parties on the same bond, begun at a time when the principal in the sum of $7,771 was due and payable, plaintiff recovered a judgment for a portion of the principal and that by reason thereof is barred from maintaining any further action on the bond.

It is on the basis of the foregoing defense that the defendant moved for summary judgment. Attached to his moving papers are copies of pleadings in the prior action as well as the judgment entered therein. Plaintiff does not deny institution of the prior action and its prosecution to judgment. Nor does the plaintiff deny that the principal of the bond was due and payable when the prior action was begun. From the form of the complaint, plaintiff's contention appears to be that the right to sue for the stated portion of the principal is derived from section 1077-g of the Civil Practice Act, and that in availing itself of the claimed statutory right, it did not offend the rule against the splitting of causes of action.

Section 1077-g was amended in 1941 and in 1944 (L. 1941, ch. 782; L. 1944, ch. 562) to sanction foreclosure of a mortgage on real property " as to which there is a default in the payment of any of the principal amount thereof as provided in the instrument creating the mortgage debt or any modification or extension thereof * * * unless the owner of the mortgaged premises shall pay the unpaid principal amount thereof at the rate of one per centum per annum for the period com-

mencing July first, nineteen hundred forty-two, and terminating June thirtieth, nineteen hundred forty-four, and at the rate of two per centum per annum thereafter. Such principal payments shall accrue from July first, nineteen hundred forty-two and shall be payable on October first, nineteen hundred forty-two and quarterly thereafter.''

Upon default in such payment, the mortgagee may bring an action to foreclose the mortgage or, by virtue of section 1077-b which permits an action on the bond where one is maintainable to foreclose the mortgage, he may sue on the entire bond. At the time of the commencement of the prior action, defendant was in default in the payment of several installments of principal, specified in section 1077-g, with the result that the plaintiff was no longer stayed from suing to recover the entire principal of the bond. The question is whether section 1077-g, as amended, sanctioned or authorized a separate action to recover specified percentages of principal.

The statute must be construed in the light of the circumstances theretofore existing and the object which it sought to accomplish. (*Chase Nat. Bank* v. *Guardian Realties, Inc.*, 283 N. Y. 350, 361.) The moratorium laws (L. 1933, chs. 793, 794) were based upon a legislative finding that there existed a serious public emergency resulting in part from the abnormal deflation of real property value and the curtailment of incomes. To relieve distressed property owners a moratorium was declared during the period of the emergency, it being provided that, notwithstanding defaults in the payment of principal, actions to foreclose the mortgage as well as actions to recover on the bond were to be stayed. (Civ. Prac. Act, §§ 1077-a, 1077-b.) In order to enjoy the benefit of the stay, the owner or mortgagor was merely required to pay the interest, taxes or other carrying charges. Limitations were also imposed upon deficiency judgments by permitting the mortgagor to set off against the amount claimed to be due the fair and reasonable market value of the mortgaged premises. (Civ. Prac. Act, § 1083-a.) A like offset was provided in an action on the bond. (Civ. Prac. Act, § 1083-b.) So that the owner might not be given an unfair advantage, it was further provided that even though the interest, taxes and other carrying charges are paid, the mortgagee may be relieved of the stay if the owner fails to pay the surplus over and above such charges in an amount which the court, upon suitable application, directs to be paid towards reduction of the principal. (Civ. Prac. Act, § 1077-c.) With the passage of time it must have become evident to the

Legislature that the emergency no longer required a complete moratorium, and so in 1941 the mortgagee was given the right to foreclose unless the owner of the mortgaged premises paid 1% of the principal each year in quarterly installments. By the 1944 amendment the amortization payments were increased to 2%.

These amendments were plainly designed to afford the mortgagee additional relief against the stays imposed by the moratorium. They did not, by their terms, create a separate cause of action for each stated installment of the principal. Section 1077-g is entitled *" Mortgages not affected."* It is expressly stated that the relief therein provided is given to the mortgagee notwithstanding the provisions of the preceding sections " and in addition to the cases therein provided for the commencement of foreclosure actions, and not in limitation thereof * * *." In view of this express language and the object sought to be achieved, it would seem that the only effect of the statute is to deprive the defaulting owner of the protection of the moratorium. If a directly enforcible obligation to pay a portion of the principal was intended, payment would have been required of the one liable on the bond rather than of " the owner of the mortgaged premises " who may never have assumed the obligations of the bond.

A somewhat analogous situation is to be found in section 1077-c. That section provides in substance that if upon suitable application it appears to the satisfaction of the court that the mortgaged property shall have produced a surplus over and above the taxes, interest and other carrying charges for a specified period " then the court may make an order directing the payment of such surplus or any part thereof as the court may determine to the mortgagee to apply towards the reduction of any past due principal. * * * In the event of default in the making of any payment directed by order of the court * * * then and in such event the applicant may maintain an action to foreclose such mortgage." In construing this section, the Court of Appeals rejected the contention that it was intended to impose personal liability on the owner of the mortgaged premises to comply with the order of the court directing payment of the surplus. Said the court: " The statute, read simply, provides only that upon default in making such payment as is determined by the court, the owner in possession loses the benefit of the moratorium and is relegated to such rights as he may have in the absence of the moratory legislation." (*Chase Nat. Bank* v. *Guardian Realties, Inc.*, 283 N. Y. 350,

365, *supra*.) That section was so construed despite the provision therein for an order directing payment to be made in reduction of any past-due principal. Section 1077-g, as amended, contains no such provision. It simply affords an additional ground for the foreclosure of a mortgage otherwise protected by the moratorium statute, foreclosure being sanctioned when there is a default in the payment of the specified percentage of the principal.

The foregoing conclusion is not inconsistent with those decisions holding that an action may be maintained for the recovery of unpaid interest and taxes even though the principal indebtedness is due and enforcible; that such items within the purview of the moratorium statute are deemed severable from the principal indebtedness so as to permit separate suit thereon free of the consequences attending the splitting of a cause of action (*Union Trust Co. of Rochester* v. *Kaplan,* 249 App. Div. 280; *Westchester Trust Co.* v. *Estate of Underhill, Inc.,* 255 App. Div. 1013) and without being subject to the statutory offset provided by section 1083-b. (*Johnson* v. *Meyer,* 242 App. Div. 798, affd. 268 N. Y. 701; *Rochester Trust & Safe Deposit Co.* v. *Hatch,* 273 N. Y. 507, 581.) As was said in *White* v. *Wielandt* (259 App. Div. 676, 678–679, affd. 286 N. Y. 609) : " The rationale behind all these cases is that interest and taxes are not affected by the moratorium statutes, which suspend actions on bonds for default in the payment of principal only, and which allow the fair value of the property to be offset when an action is brought to recover the indebtedness secured by a mortgage and *which originated simultaneously therewith;* that interest and taxes are not affected because they did not originate *simultaneously* with the indebtedness and, hence, they are not part of such indebtedness within the purview of these statutes, and an action is maintainable for their recovery without prejudice to the mortgagee's right to maintain a subsequent action to recover the debt. To allow this to be done, it was held, would not result in the splitting of a cause of action because the moratorium statutes created an anomalous situation. They prevented the mortgagee from maintaining an action for the principal only; but a default in the payment of interest and taxes was beyond the protection afforded by such moratorium statutes. The statutes thus effected a legal severance to the extent that if interest and taxes are paid, the principal need not be paid. In other words, payment of the interest and taxes suspends the payment of principal. Hence, it was concluded that for a failure to pay the interest and taxes the anomalous

situation created by the emergency statutes sanctioned, if it did not authorize, an independent action for the recovery of the interest and taxes. (*Union Trust Co. of Rochester* v. *Kaplan, supra; Westchester Trust Co.* v. *Estate of Underhill, Inc., supra.*) ''

These decisions are not helpful to the plaintiff. Interest, taxes and other carrying charges were never included within the scope of the moratorium statute in the sense that the right to enforce their payment was never suspended. Nor was the mortgagor given the right to invoke the benefits of section 1083-b, when confronted with the demand for payment of such items. Section 1083-b permits the fair and reasonable market value of the mortgaged premises to be set off in an action to recover a judgment for any indebtedness secured by a mortgage on real property which '' originated simultaneously with such mortgage and which is secured solely by such mortgage * * *.'' Since interest and taxes do not originate '' simultaneously '' with the mortgage, they are not subject to the statutory offset and within the framework of the moratorium statute are to be regarded as severable from the mortgage debt. A portion of the principal, unlike interest and taxes, is an integral part of the original principal indebtedness and is thus directly affected by the statute.

There are practical considerations which lend additional force to the belief that the statute was never intended to create a separate cause of action for each stated installment of the principal. If, as plaintiff seems to contend, a separate statutory action arose upon each default, the corresponding obligation to make the payment might be regarded as having originated at the time of the default, rather than '' simultaneously '' with the mortgage, with the result that the mortgagor would be precluded from asserting the statutory offset. The mortgagee might thereby secure complete payment of the principal without regard to the fair and reasonable market value of the mortgaged premises, and in this way frustrate one of the principal objects of the moratorium law. If, on the other hand, the supposed obligation to pay the percentage of the principal is deemed to have originated '' simultaneously '' with the mortgage, the defaulting mortgagor with the right to assert the statutory offset would be obliged to litigate four times yearly the fair and reasonable market value of the mortgaged premises. The cost of defending each such action, including the cost of enlisting expert opinion, might well be substantial and out of all proportion to the obligations assumed in the execution of

the bond. Moreover, expert opinion on the value of real estate is far from absolute and judicial determinations may vary from time to time despite the existence of a stable real estate market over an extended period. In addition, the right of the defaulting mortgagor would at all times be subject to fluctuations in real estate values. Regardless therefore of the precise nature of the right for which plaintiff contends, the consequences that might flow from its exercise are such as to negative the suggestion that the Legislature intended to go beyond furnishing an additional ground upon which a mortgage might be foreclosed.

For the purpose of the decision herein we need not determine whether the plaintiff by prosecuting the prior action to judgment is chargeable with having split its cause of action on the bond, although this would seem to be the inevitable effect of the action taken. We need only conclude that the statute was not intended to create a separate enforcible obligation to make the payments therein specified, and that upon the undisputed facts appearing on the motions for summary judgment defendant is entitled to a dismissal of the complaint.

The judgment in the prior action is not determinative of the present issue. Both actions proceeded upon the theory that the defendant became obligated by virtue of the statute to pay 1% and later 2% of the principal. The judgment in the prior action may be taken as a determination that such right of action was created by the statute. But the mere fact that the issue of law was so decided does not preclude defendant in the present action from contesting the claim that he is under a statutory obligation to pay 2% of the principal. Both causes of action are not the same, for in each defendant is charged with a separate and distinct breach of the supposed statutory obligation. Consequently, the question of law assumed to have been previously decided is not conclusive between the parties in the present action. (Restatement, Judgments, § 70, comment e.)

The judgment and order granting plaintiff's motion for summary judgment and the order denying defendant's motion for summary judgment should be reversed on the law, with ten dollars costs to defendant, and plaintiff's motion denied. Defendant's motion for summary judgment should be granted with ten dollars costs.

SMITH and McCOOEY, JJ., concur.

Judgment and order reversed, etc.