■ MAX FEHR, Respondent, v. FIRST AMERICANA CORPORATION, Defendant. (Action No. 1.) NASSAU SAVINGS AND LOAN ASSOCIATION, Respondent, v. FIRST AMERICANA CORPORATION et al., Defendants, and GEORGE FOXSON et al., Doing Business as F. F. C. ASSOCIATES, et al., Appellants. (Action No. 2.) (And Two Other Actions.)—Order of the Supreme Court, Queens County, dated May 22, 1968, modified, on the law and the facts, by deleting therefrom the seventh and eighth decretal paragraphs and substituting therefor a provision directing the receiver (1) to restate his account so as to set forth the rents and expenditures attributable to the period between June 3, 1965 and August 1, 1966 separately from the same for the period thereafter and (2) to distribute the moneys in his possession, after deduction of his commissions, as follows: (a) to Max Fehr, all the rents collected between June 3, 1965 and August 1, 1966, less expenditures, and (b) to F. F. C. Associates, all the rents collected after August 1, 1966, less expenditures. As so modified, order affirmed, without costs. Order of the same court, dated September 13, 1968, which denied a motion by F. F. C. for reconsideration, in which appellants Hollinger and Sarlitt joined in part, affirmed, without costs. In this proceeding by a court-appointed receiver of rents for an order settling his account, directing his discharge, fixing his commissions and directing payment of the balance of the moneys in his hands, the issue concerns which of three sets of claimants, (1) F. F. C. Associates, second mortgagees, (2) Max Fehr, a judgment creditor, and (3) Charles Hollinger and Rose Sarlitt, as trustee for Emily A. Hollinger, judgment creditors (hereinafter called the " Hollingers "), is entitled to the $21,613.02 held by the receiver for distribution. By judgment entered November 20, 1964 the Hollingers became judgment creditors of First Americana Corporation. By judgment entered January 25, 1965 Fehr became a judgment creditor of First Americana (in Action No. 1). On June 3, 1965, pursuant to CPLR 5228, Fehr obtained an order of the Supreme Court, Queens County, appointing a Receiver of rents of certain real property owned by First Americana, 34 two-family homes in Howard Beach, Queens. In July, 1965, F. F. C., as second mortgagee, commenced a foreclosure action because of alleged defaults in monthly payments. Shortly thereafter, on July 30, 1965, Nassau Savings and Loan Association, the first mortgagee, also commenced a foreclosure action (Action No. 2) which was carried to completion and, pursuant to a judgment entered therein on February 1, 1966, the homes were sold and the first mortgage satisfied. On August 6, 1965 the receivership was extended for the benefit of Nassau and on August 1, 1966 it was extended to F. F. C. The receivership was never extended to the Hollingers, who submit they were unaware of the rent asset because they had no notice of Fehr's receivership application. F. F. C. contends that it is entitled to the rents collected by the receiver from August 6, 1965, when the receivership was extended to Nassau, since Nassau's mortgage was satisfied from the proceeds

of the foreclosure sale. F. F. C. also relies on (1) the provision in the mortgage note entered into between First Americana and Nassau, to which F. F. C. was not a party, which gave the mortgagee, in the event of a default, the right to take possession and receive rents without the requirement of having a receiver appointed to enforce those rights; and (2) an agreement, duly recorded, assigning the rents to Nassau. In our opinion, although the lien of F. F. C. was superior to that of a judgment creditor, it is well established that the rents must in some way be reduced to possession (*Matter of Chase Nat. Bank* v. *Guardian Realties*, 283 N. Y. 350). The order of August 1, 1966 extending the receivership for F. F. C.'s benefit was the consummate act required to effectuate the superiority of its lien. Because a receivership is only for the benefit of the party which makes application therefor and does not inure to the benefit of any one else until it is extended to that other party (*Zajic* v. *Sikora Realty Corp.*, 252 App. Div. 343), those rents collected from the date of Fehr's receivership order until August 1, 1966 must be distributed to Fehr. All those rents collected after August 1, 1966 must be distributed to F. F. C. (see *South Fallsburg Nat. Bank* v. *Bloom*, 142 Misc. 555; *Klingenstein* v. *Coolidge Holding Co.*, 227 App. Div. 427). In those cases relied on by F. F. C. the issue involved claims made on property by the owner and the mortgagee. Here, there is the intervening and superior right of a judgment creditor who was the first to reduce the rents to possession by the appointment of a receiver. The restatement of the receiver's account which is directed herewith is necessary because his existing account does not separate the rents and expenditures into the period before August 1, 1966 and the period thereafter; and it is therefore impossible to determine the net amounts of each period by the existing account. The claim of priority made by the Hollingers, also as judgment creditors, must be denied. Pursuant to CPLR 5234 (subd. [c]), "for a judgment to attain status in the ranking of priorities there must either be a levy, an order directing delivery of property, or the appointment of a receiver. Any other measures taken by the judgment creditor, no matter how diligent, on an absolute or comparative basis, do not suffice to qualify for priority" (*City of New York* v. *Panzirer*, 23 A D 2d 158, 162). Inasmuch as the Hollingers took none of these steps, they do not qualify for a priority. Christ, Acting P. J., Brennan, Hopkins and Martuscello, JJ., concur; Benjamin, J., dissents in part, with the following memorandum. I disagree with that part of the majority decision which directs the receiver of rents to distribute to Max Fehr, a judgment creditor, all the net rents collected by him (the Receiver) between June 3, 1965 and August 1, 1966. In my opinion, all the net rents collected after August 6, 1965 (when the receivership was extended for the benefit of Nassau Savings and Loan Association, the first mortgagee) should be deposited with the County Clerk of Queens County, subject to the report of Philip L. Weiner, the referee in the surplus money proceedings in the foreclosure action brought by Nassau, as the first mortgagee; and those moneys should then be distributed, pursuant to court order, as part of the surplus moneys in the foreclosure action, with F. F. C. Associates, as the second mortgagee, receiving its appropriate share. As the majority points out, Nassau chose to satisfy its mortgage from the proceeds of the foreclosure sale, instead of resorting to the net rents collected by the Receiver. By so doing, it substantially depleted the surplus moneys available in the foreclosure action for the benefit of F. F. C., the second mortgagee, as well as itself, the first mortgagee. In such case, equity will subrogate F. F. C. to Nassau's rights in the net rents. "If the holder of a prior mortgage who can resort both to the proceeds of a sale under foreclosure, and to the rents collected, for satisfaction of his debt, chooses to satisfy it out of the proceeds of the sale and thus exhausts the only fund to which the holders of subordinate liens may resort, the court

will allow the latter claimant to stand in the place of the former *pro tanto* in enforcing his claim out of the fund to which otherwise he could not resort" (*Womans Hosp.* v. *Sixty-Seventh St. Realty Co.,* 265 N. Y. 226, 235; see, also, *Keogh* v. *McManus,* 34 Hun 521; cf. *Conroy* v. *Polstein,* 150 App. Div. 832; *Matter of Lafayette Nat. Bank of Brooklyn,* 254 App. Div. 207, 209). In the case at bar, Nassau became entitled to the net rents after August 6, 1965, when it had the receivership extended for its benefit. It thus had recourse to two funds for the satisfaction of its first mortgage — the net rents and the proceeds of the foreclosure sale. Between August 6, 1965 and August 1, 1966 (when F. F. C. had the receivership extended for its benefit), F. F. C. had no direct interest in the net rents, and could look only to the proceeds of the foreclosure sale for the satisfaction of its second mortgage. Under those circumstances, it became subrogated to Nassau's rights in the net rents received between August 6, 1965 and August 1, 1966, because of Nassau's election to satisfy its first mortgage entirely from the proceeds of the foreclosure sale (*Womans Hosp.* v. *Sixty-Seventh St. Realty Co., supra; Keogh* v. *McManus, supra*). On the facts in this case, it was unnecessary for F. F. C. to have the receivership extended for its benefit, since it had a right to rely on the rule in equity that it would be subrogated to Nassau's rights in the net rents if Nassau did not use them to satisfy its mortgage; hence, it is irrelevant that F. F. C. did not have the receivership extended for its benefit until August 1, 1966. As the majority has noted, the lien of F. F. C. was superior to that of a judgment creditor; and equity will not permit Nassau to nullify that superior lien (and in effect transfer it to a subordinate lienor, a judgment creditor) by its unilateral act of choosing to satisfy its mortgage entirely from the proceeds of the foreclosure sale. Procedural propriety requires that all the net rents collected after August 6, 1965 be deposited with the County Clerk subject to the report of the Referee in the surplus money proceedings; that they be accounted for by the Referee, together with the surplus proceeds of the foreclosure sale; and that F. F. C. assert its claim to the net rents and other surplus moneys in the surplus money proceeding.